UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| Jack URBONT d/b/a URBONT MUSIC | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | No. 11-Civ-04516(NRB) |
| SONY MUSIC ENTERTAINMENT, individually d/b/a EPIC RECORDS ("Sony"), DENNIS COLES p/k/a GHOSTFACE KILLAH and RAZOR SHARP RECORDS, LLC | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN OPPOSITION
<u>TO DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................2

ARGUMENT......................................................................................................4

    I.     STANDARD OF REVIEW UNDER FEDERAL RULE OF CIVIL
          PROCEDURE 12(B)(6)................................................................5

    II.    URBONT'S FEDERAL COPYRIGHT INFRINGEMENT CLAIMS
          ARE NOT BARRED BY THE STATUE OF LIMITATIONS .............................5

       A.     The Discovery Rule Applies To Copyright Infringement Claims......................5

       B.     Second Circuit Courts Correctly Applied The Discovery Rule Prior
           To 2004 ................................................................................6

       C.     *Auscape* Applies To The Injury Rule Based Upon It's (Erroneous)
           Reading of TRW ....................................................................7

       D.     Courts Have Generally Rejected The *Auscape* Approach And
           Conclusion............................................................................7

       E.     The Last Southern District Of New York Court To Decide This Issue
           Rejected *Auscape* ..................................................................9

       F.     Second Circuit Decisions Call Into Question The Validity Of *Auscape* ...........10

       G.     The *Auscape* Analysis Has Been Rejected By The Second Circuit .................10

       H.     This Court Should Apply the Discovery Rule to Urbont's Federal
           Copyright Infringement Claim ......................................................11

    III.   APPLICATION OF THE DISCOVERY RULE REQUIRES THE DENIAL
          OF SONY'S MOTION ................................................................11

       A.     The Discovery Rule Means What It Says ............................................11

       B.     Sony Cites No Authority Disagreeing With *Polar Bear*.................................12

       C.     The Allegations In The Complaint Establish Urbont Acted With Diligence
           In Protecting His Copyrights .........................................................13

       D.     There Is No Precedent Allowing Dismissal Of Urbont's Claims Prior To
           May 21, 2007 For Lack Of Diligence ..............................................14

    IV.   URBONT'S STATE LAW CLAIMS ARE NOT BARRED BY THE
          STATUTE OF LIMITATIONS ........................................................17

       A.     Each Wrongful Act By Sony Began The Running Of A New Statute Of
           Limitations...........................................................................18

B.    Sony's Actions Trespassed On Urbont's Rights ................................................ 18

C.    Urbont Has Not Alleged Conversion Of His Property ...................................... 21

D.    Urbont's State Law Claims Are Viable As Sony Has Continued To Tortiously Harm Urbont During The Limitations Period ................................. 23

V.    ADMINISTRATIVE WITHDRAWAL .................................................................... 24

CONCLUSION ........................................................................................................................ 24

# TABLE OF AUTHORITIES

*A & G Research, Inc. v. GC Metrics, Inc.,*
  **No. 05870/2007, 2008 NY Slip Op 51016U (N.Y. Sup. Ct. 2008)** ................................... 19

*Architectronics, Inc. v. Control Systems, Inc.,*
  **935 F. Supp. 425 (S.D.N.Y. 1996)** ................................................................................. 20

*Auscape International v. National Geographic Society,*
  **409 F. Supp. 2d 235 (S.D.N.Y 2004)** ........................................................................ 6-10

*Bell Atlantic Corp. v. Twombly,*
  **50 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)** ............................................. 5, 13

*Bradley v. Roe,*
  **27 N.E.2d 35 (N.Y. 1940)** ............................................................................................ 22

*Bridgeport Music, Inc., et al., v. Justin Combs Publishing, et al.,*
  **507 F.3d 470 (6th Cir. 2007)** ....................................................................................... 20

*Catlin v. Manilow,*
  **170 A.D.2d 357 (N.Y. Sup. Ct. 1991)** ........................................................................... 22

*Charles Atlas, Ltd. v. DC Comics, Inc.,*
  **112 F. Supp. 2d 330 (S.D.N.Y. 2000)** ........................................................................... 15

*Gaiman v. McFarlane,*
  **360 F.3d 644 (7th Cir. 2004)** ......................................................................................... 8

*Goldberg v. Cameron,*
  **482 F. Supp. 2d 1136 (N.D. Cal. 2007)** .................................................................. 15, 16

*Greenlight Capital, Inc. v. Greenlight (Switzerland) S.A.,*

    **No. 04 Civ 3136, 2005 U.S. Dist. LEXIS 2 (S.D.N.Y. Jan. 3, 2005)** ........................... 19-20

*Groden v. Allen,*

    **279 Fed. Appx. 290 (5th Cir. 2008)** .................................................................. 8

*Home Design Services, Inc. v. B & B Custom Homes, LLC,*

    **509 F. Supp. 2d 968 (D. Colo 2007) (10th Cir.)** ............................................. 8

*Kassner v. 2nd Ave. Delicatessen, Inc.,*

    **496 F.3d 229 (2d Cir. 2007)** ...................................................................... 5,13

*Kwan v. Schlein,*

    **634 F.3d 224 (2d Cir. 2011)** ....................................................................... 10

*Lemelson v. Carolina Enter., Inc.,*

    **541 F. Supp. 645 (S.D.N.Y. 1982)** ............................................................... 20

*Lyons Partnership, L.P. v. Morris Costumes,*

    **243 F.3d 789 (4th Cir. 2001)** ....................................................................... 8

*Manuel v. Paramount Pictures*

    **No. 01 Civ 814, 2001 U.S. Dist. LEXIS 16065 (S.D.N.Y. Sept. 26, 2001)** ................. 15-16

*Merchant v. Levy,*

    **92 F.3d 51 (2d Cir. 1996)** .................................................................... 6, 10-13

*New York v. Seventh Regiment Fund, Inc.,*

    **774 N.E.2d 702 (N.Y. 2002)** ....................................................................... 21

*Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.,*

    **297 F. Supp.2d 463, 488 n.20 (N.D.N.Y. 2003)** ....................................... 20, 23

*Opals on Ice Lingerie v. BodyLines, Inc.*,

    **425 F. Supp. 2d 286 (E.D.N.Y. 2004)**....................................................................22-23

*Palermo v. Taccone*,

    **913 N.Y.S.2d 859 (N.Y. App. Div. 2010)** ......................................................................21

*Polar Bear Productions, Inc. v. Timex Corp.*,

    **384 F.3d 700 (9th Cir. 2004)**..........................................................................8, 11-12

*Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*,

    **477 F.3d 383 (6th Cir. 2007)**.....................................................................................8

*Rouse v. Walter & Assocs., LLC*,

    **513 F. Supp. 2d 1041 (S.D. Iowa 2007) (8th Cir)** ........................................................8

*Sachs v. Cluett Peabody & Co.*,

    **39 N.Y.S.2d 853 (N.Y. App. Div. 1943)** ......................................................................19

*Salerno v. City University of New York*

    **191 F. Supp. 2d 352 (S.D.N.Y 2001)** ..........................................................................12

*Skwira v. United States*,

    **344 F.3d 64  (1st Cir. 2003)** .......................................................................................7

*SongByrd, Inc. v. Estate of Grossman*,

    **206 F.3d 172 (2d Cir. 2000)** ......................................................................................22

*Sporn v. MCA Records*,

    **448 N.E.2d 1324 (N.Y. 1983)** ..............................................................................18, 19

*Stone v. Williams,*
   ***970 F.2d 1043 (2d Cir. 1992)*** ........................................................................6, 10, 12-13

*Taylor v. Merick,*
   ***712 F.2d 1112 (7th Cir. 1983)*** .............................................................. 12-13

*Tech 7 Systems, Inc. v. Vacation Acquisition, LLC d/b/a Vacation Express,*
   ***No. 08-0436, 2009 U.S. Dist. LEXIS 7038, (D.D.C. Sept. 2, 2009) (D.C. Cir.)*** ............... 8

*Thorton v. J Jargon Co.,*
   ***580 F. Supp. 2d 1261 (M.D. Fla. 2008)*** ................................................... 7-8

*TRW, Inc. v. Andrews,*
   ***534 U.S. 19 (2001)*** ..................................................................... 1, 7

*Warren Freedenfeld Assocs. v. McTigue,*
   ***531 F.3d 38 (1st Cir. 2008)*** ..............................................................7, 10

*Webber v. Geffen,*
   ***63 F. Supp. 2d 458 (S.D.N.Y. 1999)*** ...........................................................17

*William A. Graham Co. v. Haughey,*
   ***568 F.3d 425 (3d Cir. 2009)*** ....................................................................7-10

*Williams v. Curington,*
   ***662 F. Supp. 2d 33 (D.D.C 2009)*** ..............................................................16

*Zalewski v. T.P. Builders, Inc.,*
   ***No. 1:10-cv-876, 2011 U.S. Dist. LEXIS 84953*** ...............................................9

## STATUTES

17 U.S.C. § 507(a) ...................................................................................................... 9

17 U.S.C. § 507(b) ................................................................................................... 5, 9

## TREATISES

Melville B. Nimmer & David Nimmer NIMMER ON COPYRIGHT ............................. 1, 12, 16

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff Jack Urbont respectfully submits this memorandum of law in opposition to the motion of Defendants Sony Music Entertainment d/b/a/ Epic Records and Razor Sharp Records, LLC (collectively "Sony") to: (1) limit the damages in the federal copyright infringement claim of Urbont's musical composition to May 21, 2007, which is three years before the May 21, 2010 tolling agreement entered into between Urbont and Sony; and (2) dismiss the state law claims relating to the common law infringement and unlawful use of Urbont's master recording on statute of limitations grounds.[1] Sony contends, as to the federal copyright infringement claim, the "injury rule," and not the "discovery rule" applies, and, as to the state law claims, there is no rolling statute of limitations like in cases arising under the United States Copyright Act (the "Copyright Act"), so Urbont's claims are barred for failing to bring this action within three years of the first unlawful use of his property. (Sony mem. at 1). Sony is wrong on both points.

First, as discussed fully below, the Second Circuit firmly applied the discovery rule in cases involving the statute of limitations under the Copyright Act prior to the decision of the United States Supreme Court in *TRW, Inc. v. Andrews*, 534 U.S. 19 (2001), which involved the statute of limitations under the Fair Credit Reporting Act (the "FCRA"). In 2004, a court in this district held that *TRW, Inc.*, required the application of the injury rule to the statute of limitations under the Copyright Act, and also stated that *TRW, Inc.*, called into question the earlier Second Circuit authority on this issue. As discussed below, that decision was based on a misreading of *TRW, Inc.*, and the text of the Copyright Act, and any cases following it in this District are not good law for several reasons: (1) every Circuit court considering the issue has concluded that

---

[1] The United States Copyright Act protects Urbont's musical composition, so his claim relating to its infringement arises under that statute. Prior to 1972, the United States Copyright Act did not protect sound recordings. 1 Melville B. Nimmer & David Nimmer NIMMER ON COPYRIGHT § 2.10[A][1], 2-174. Therefore, any claim relating to the infringement of a sound recording first fixed on a master recording prior to 1972 arises under state law. *Id.* There is no dispute that Urbont's Iron Man Theme was first fixed on a master recording prior to 1972.

*TRW, Inc.,* does not make the injury rule applicable to copyright infringement actions, but instead has held the discovery rule is applicable; (2) the latest authority from the Southern District, decided on August 2, 2011, follows those decisions applying the discovery rule; and (3) the Second Circuit has recently stated that its pre-*TRW, Inc.,* authority remains good law. As a result, this Court should apply the discovery rule, and allow Urbont to recover damages dating back to the release of *Supreme Clientele.*

Urbont also has asserted state law claims for common law copyright infringement of his master recording, unfair competition, and misappropriation (which, as also discussed fully below, involves many types of wrongdoings and is not defined by the title), New York law is clear that, with respect to these claims, where there is a trespass of property, such that the property still has value to the owner (as opposed to an action leaving the property without value to the owner), there is a rolling statute of limitations, and a plaintiff may recover damages incurred within three years of the filing of the action. That is precisely the situation in this action, and Sony's motion on this point must also be denied.

## STATEMENT OF FACTS[2]

Urbont is a composer whose work spans the realms of theatre, film, radio, and television. (Am. Cplt. ¶ 10). His themes to the original TV representations of "Iron Man," "Captain

---

[2] In accordance with Federal Rule of Civil Procedure 15(a)(1), Urbont may, as a matter of right, file a First Amended Complaint through August 29, 2011. Urbont intended to file his First Amended Complaint Contemporaneously with the filing of this Memorandum in Opposition to Sony's Motion to Dismiss. However, Southern District of New York Electronic Case Filing Rules and Instructions Rule 18.3 (April 4, 2011) states all complaints, including amended complaints, must be filed by "[d]eliver[ing] the paper original to the appropriate Clerk's office." In order to comply with this Rule, Urbont will file, in person, his First Amended Complaint on Monday August 29, 2011. The instant Memorandum in Opposition to Sony's Motion to Dismiss cites to the First Amended Complaint. A copy of the First Amended Complaint, which will be filed Monday, is attached as Exhibit A hereto.The First Amended Complaint was filed primarily to include additional allegations of diligence by Urbont, and, while not necessary, also clarifies that the actions of Sony and the other defendants constitute a trespass of Urbont's property.

America," "Hulk," "Submariner," and "Thor" have endured and have become synonymous with those action heroes. (Am. Cplt. ¶ 17).

Urbont is the owner of the right, title, and interest in and to the musical composition and sound recording known as the "Iron Man Theme." (Am. Cplt. ¶ 20). Denis Coles p/k/a/ Ghostface Killah ("Ghostface"), has associated himself with Iron Man by referring to himself as Tony Starks, a play on the fictional name, Tony Stark, which is Iron Man's true identity. ( Am. Cplt. ¶ 58). Additionally, during the 1990s, Ghostface released an album titled *Ironman*. (Am. Cplt. ¶ 59).

In 2000, Sony released an album, *Supreme Clientele*, by Ghostface. (Am. Cplt. ¶23-24, 26) *Supreme Clientele* illegally copies Urbont's musical composition and sound recording of the Iron Man Theme in two places. (Am. Cplt. ¶ 23).

Urbont has actively safeguarded his copyright in the Iron Man Theme. (Am. Cplt. ¶ 31). In 1995, Urbont asserted his rights when he believed New World Entertainment, LTD and Marvel Entertainment Group, Inc. were violating those rights.[3] (*Id.*). Urbont licensed the Iron Man Theme to the 2008 live action film *Iron Man* starring Robert Downey, Jr., and to the separately released soundtrack associated with that film. (Am. Cplt. ¶ 18).

Urbont has complied with all of the federal laws pertinent to the musical composition of the Iron Man Theme as a copyrighted work, and the subject copyright registrations on the musical composition of the Iron Man Theme have been appropriately deposited and/or registered with the U.S. Copyright office. (Am. Cplt. ¶ 21, 33). Most recently, Urbont filed a copyright renewal in 1994. (Am. Cplt. ¶ 21). These actions put the world on notice that Urbont owned the Iron Man Theme. (Am. Cplt. ¶ 33).

---

[3] Urbont expresses no claim against these parties and avers the parties have a license for the use of the Iron Man Theme.

Additionally, Urbont is an artist associated with Broadcast Music, Inc. ("BMI"). (Am. Cplt. ¶ 34). As a BMI artist, every time there is a public performance of one of Urbont's copyrights, he receives a royalty, and a detailed royalty statement. (*Id.*). The statement indicates the basis for public performance payments. (*Id.*). Urbont regularly and carefully reviews these royalty statements, but of course found nothing that would have alerted him to the defendants' unlawful use of his property. (Am. Cplt. ¶ 35).

Despite his exercise of ordinary diligence in protecting his rights, Urbont did not discover the unlawful uses of his Iron Man Theme until shortly before contacting Sony. (Am. Cplt. ¶ 39). The reason is simple: Sony and Ghostface went to great lengths to prevent such discovery. (Am. Cplt. ¶ 37). For example, Sony and Ghostface actually changed the name of the "Iron Man Theme" twice, once calling it "INTRO," and once calling it "IRON'S THEME - CONCLUSION," and neither time crediting Urbont. (*Id.*). The only conclusion that may be reached from this activity is that they did not want Urbont to be alerted to the use of his property.

Additionally, neither improperly used track was ever released as a single, did not receive air play, and was never publicized as being on the album. (Am. Cplt. ¶ 38). The only way Urbont could have discovered its use, therefore, was to purchase the album, and the hundreds of thousands of other albums released each year, and listen to every track of every album to see if his property was being unlawfully used. This would be an unreasonable thing to expect.

Urbont has not received, from the misuse of his song, royalties or any other payment from any source, including for its use as digital downloads, ringtones, or in connection with *Supreme Clientele*'s re-release in 2010. (Am. Cplt. ¶ 29). Upon discovering its use, Urbont contacted Sony, but this suit followed when the matter could not be resolved. (Am. Cplt. ¶ 39).

## ARGUMENT

# I.    Standard of Review under Federal Rule of Civil Procedure 12(b)(6).

When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule 12(b)(6), the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiffs' favor. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint must include "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Where a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.*

# II.   Urbont's Federal Copyright Infringement Claims Are Not Barred by the Statute of Limitations.

The statute of limitations for a federal copyright infringement action is three years from the date the cause of action accrues. 17 U.S.C. § 507(b). Sony concedes (1) a May 21, 2010 tolling agreement between the parties exists; and (2) each sale constitutes a separate act of infringement. (Sony memo. at 1, 1 n.2). As a result, Sony does not dispute that Urbont may recover damages on the federal copyright infringement claim from May 21, 2007 onward. The fight on this claim is whether the discovery rule applies, so Urbont may go back to the release of *Supreme Clientele*, or whether the injury rule applies, so his damages are limited to the date suggested by Sony. As discussed below, it is clear the discovery rule applies.

## A.  The Discovery Rule Applies to Copyright Infringement Claims.

In contending that the injury rule applies, Sony states the text of the Copyright Act does not offer an answer, and relies on what it terms the holdings of "the majority of district courts in this Circuit." (Sony mem. at 6). What Sony does not explain, and what a full analysis reveals, is that: (1) the Southern District of New York courts applying the injury rule have done so based upon a United States Supreme Court case involving the FCRA, which is not involved here; (2)

the language of the FCRA differs from the Copyright Act, (3) every Circuit court considering the issue, following that decision, as well as district courts doing so where the Circuit Court has not ruled, save certain district courts in the Southern District of New York, have applied the discovery rule, and (4) the most recent holding in the Southern District of New York follows those cases and applies the discovery rule. The Second Circuit has also indicated that it will apply the discovery rule given the opportunity. Accordingly, this Court should apply the discovery rule.

**B. Second Circuit Courts Correctly Applied the Discovery Rule Prior to 2004.**

In the 1996 case, *Merchant v. Levy*, the Second Circuit held the discovery rule applied to copyright co-ownership claims. 92 F.3d 51, 56 (2d Cir. 1996) (citing *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)). In coming to its decision, the court held claims "under the Copyright Act" followed the discovery rule without distinguishing between ownership and infringement claims. *Id.* In general, Southern District of New York courts interpreted this decision as meaning the discovery rule applied to copyright infringement claims. *See Auscape International v. National Geographic Society*, 409 F. Supp. 2d 235, 243 n.34 (S.D.N.Y 2004) (collecting four cases following the injury rule and nine cases following the discovery rule).

In 2001, The United States Supreme Court decided *TRW, Inc. v. Andrews*. 534 U.S. 19. *TRW* involved a statute of limitations question with respect to the FCRA. *Id.* at 22. The Ninth Circuit applied the general rule that a statute of limitations is governed by the discovery rule. *Andrews v. TRW, Inc.*, 225 F.3d 1063, 1066 (9th Cir. 2000). The Supreme Court reversed, but avoided deciding whether a presumption in favor of the discovery rule existed where Congress had not spoken to the injury rule or the discovery rule. *Id.* at 27.

The *TRW* Court made a narrow ruling finding Congress had spoken in favor of the injury rule as applied to the FCRA. *Id.* at 28. The Court held the application of the injury rule or the discovery rule should be determined by looking at the "text and structure" of an Act. *Id.* The FCRA contains a two year statute of limitations with one exception. *Id.* The exception contained in the Act allows for the discovery rule to apply in cases of willful misrepresentation. *Id.* The Court found that there would be no need for an exception applying the discovery rule to cases of willful misrepresentation if the discovery rule applied generally to the FCRA. *Id.*; *see also Skwira v. United States*, 344 F.3d 64, 74 (1st Cir. 2003).

**C. *Auscape* Applies The Injury Rule Based Upon Its (Erroneous) Reading Of TRW.**

In *Auscape*, the court stated the "text and structure" of the Copyright Act offered no evidence of an intention to have the Act governed by the injury rule or the discovery rule, and remarked that *TRW* does not address the applicability of the discovery rule where a statute's "text and structure" does not provide the answer. *Id.*; *see also Thorton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1285 (M.D. Fla. 2008) (applying the discovery rule); *but see Haughey*, 568 F.3d at 434 (holding the "text and structure" of the Copyright Act indicated the discovery rule should apply). Instead of applying the *TRW* analysis, therefore, the *Auscape* court looked to the legislative history of the Copyright Act. *Id.* at 247. The court found the legislative history counseled for the application of the injury rule. *Id.*

*Auscape* also held that *TRW* called into question the validity of the Second Circuit's prior holdings in *Stone* and *Merchant*. 409 F. Supp. 2d at 244.

**D. Courts Have Generally Rejected the *Auscape* Approach and Conclusion.**

Every Circuit, which has decided this issue, has rejected this approach and applied the discovery rule. *See Warren Freedenfeld Assocs. v. McTigue*, 531 F.3d 38, 46 (1st Cir. 2008);

*William A. Graham Co. v. Haughey*, 568 F.3d 425, 434 (3d Cir. 2009); *Lyons Partnership, L.P. v. Morris Costumes,* 243 F.3d 789, 796 (4th Cir. 2001); *Groden v. Allen*, 279 Fed. Appx. 290, 294 (5th Cir. 2008); *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 390 (6th Cir. 2007); *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004); *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004). Additionally, district courts, in Circuits that have not yet decided this issue, apply the discovery rule. *See Rouse v. Walter & Assocs., LLC*, 513 F. Supp. 2d 1041, 1067 (S.D. Iowa 2007) (8th Cir); *Home Design Services, Inc. v. B & B Custom Homes, LLC*, 509 F. Supp. 2d 968, 972 (D. Colo 2007) (10th Cir.); *Thorton*, 580 F. Supp. 2d at 1285 (11th Cir.); *Tech 7 Systems, Inc. v. Vacation Acquisition, LLC d/b/a Vacation Express*, No. 08-0436, 2009 U.S. Dist. LEXIS 7038, at *15 (D.D.C. Sept. 2, 2009) (D.C. Cir.).

As Colorado District Judge Daniel noted, "the only courts to have adopted 'the injury rule' in relation to a copyright infringement claim are certain district courts in the Southern District of New York." *Home Design Services, Inc.*, 509 F. Supp. 2d at 972.

In fact, the Third Circuit specifically addressed *Auscape* in applying the discovery rule to copyright infringement claims. *Haughey*, 568 F.3d at 434. The *Haughey* court held the "text and structure" of the Copyright Act supported the application of the discovery rule, writing:

> *Criminal* actions under the Copyright Act must be "commenced within 5 years after the *cause of action arose.*" 17 U.S.C. § 507(a) (emphasis added). Just six years prior to the amendment to the Copyright Act that added the civil limitations period now codified at 17 U.S.C. § 507(b), the Supreme Court interpreted language similar to § 507(a)'s criminal limitations period in the Admiralty Act ("cause of action arises") to embody the injury rule. *McMahon v. United States*, 342 U.S. 25-26, 27 (1951); *see also TRW*, 534 U.S. at 32 (noting that petitioner "offer[ed] a strong argument" that use of the word "arise" in a statute of limitations provision signals congressional intent to adopt the injury rule (citing *McMahon*, 342 U.S. 25, 72 S. Ct. 17, 96 L. Ed. 26)). Significantly, Congress used different language in the *civil* limitations provision ("after the claim accrued"), which the Supreme Court had previously interpreted as embodying the discovery

8

rule. *See Urie v. Thompson*, 337 U.S. 163, 169-170, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949) (construing "cause of action accrued" in Federal Employers' Liability Act and holding that statute of limitations was not triggered until injured employee should have known of injury). Given the maxim of statutory construction that "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended," *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9, 124 S. Ct. 2739, 159 L. Ed. 2d 718 (2004) (quotation omitted), Graham persuasively argues that the criminal and civil limitations periods embody different claim accrual rules and that § 507(b) should be interpreted to embody the discovery rule.

*Id.* at 435.

### E. The Last Southern District of New York Court to Decide this Issue Rejected *Auscape*.

In the most recent Southern District of New York case addressing this issue, Judge

Sharpe rejected *Auscape* finding *Haughey* "convincingly persuasive." *Zalewski v. T.P. Builders,*

*Inc.*, No. 1:10-cv-876, 2011 U.S. Dist. LEXIS 84953, at *21 (S.D.N.Y. Aug. 2, 2011):

> [T]he discovery rule best comports with the text and structure of the Copyright Act. Specifically, a comparison of the Act's criminal limitations period, which begins to run when the "cause of action arose" and therefore embodies the injury rule, 17 U.S.C. § 507(a), with the Act's civil limitations period, which begins to run when "the claim accrued," § 507(b), dictates that the term "accrued" carries a meaning different from "arose" and therefore embodies a different rule, namely the discovery rule. Moreover, while the *Auscape* court points out that Congress's consideration of a statutory exception for fraudulent concealment implicitly demonstrates that Congress intended for accrual to occur at the time of the infringement, since a discovery rule would render a fraudulent concealment exception "superfluous," the *Haughey* court highlights "the important fact . . . that Congress rejected inclusion of any statutory exceptions to the statute of limitations period," And despite the policy interest in achieving national consistency with a bright-line rule, the court shares the Third Circuit's concern that certain types of infringement may not constitute truly "public acts" that are readily subject to detection.

*Id.* at 22-23 (internal citations omitted).

This bucks what Sony describes as the "dominant trend" in the Southern District of New

York. While most courts applying the injury rule, following *Auscape,* have simply relied on

*Auscape*'s analysis, this decision demonstrates the persuasive nature of evidence not considered

by *Auscape*. It also moves back to the Supreme Court's holding requiring courts to consider the "text and structure" of an Act in deciding whether to apply the injury rule or the discovery rule. That analysis requires adoption of the discovery rule.

**F. Second Circuit Decisions Call into Question the Validity of *Auscape*.**

The Second Circuit has also issued opinions which undercut the basic premise behind *Auscape*. *Auscape* presumes *TRW* calls into question the validity of *Stone* and *Merchant*. 409 F. Supp. 2d at 244 ("It is uncertain whether *Stone* and *Merchant* remain good law even in the co-ownership context."). The Second Circuit has stated *Stone* and *Merchant* remain good law. *See Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) (citing *Merchant*, 92 F.3d at 56; *Stone*, 970 F.2d at 1048). Other Circuits have also continued to rely on *Stone* for the proposition that the discovery rule applies to copyright infringement claims. *See e.g. Haughey*, 568 F.3d at 433 (citing *Stone*, 970 F.2d at 1049); *McTigue*, 531 F.3d at 44 (citing *Stone*, 970 F.2d at 1048).

**G. The Auscape Analysis Has Been Rejected By The Second Circuit.**

In coming to the decision the Copyright Act's statute of limitations is subject to the discovery rule, both *Stone* and *Merchant* interpreted Section 507 subsection (b) of Title 17 of the United States Code. *Merchant*, 92 F.3d at 56; *Stone*, 970 F.2d at 1047. Both ownership and copyright infringement claims are governed by this same statute of limitations.

Section 507(b) is one sentence: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." The Second Circuit interprets that sentence as applying the discovery rule. *Kwan*, 634 F.3d at 228. The *Auscape* court reads the sentence as applying the injury rule. 409 F. Supp. 2d at 244. Since the Second Circuit has stated that *Stone and Merchant* remain good law, *Kwan*, 634 F.3d at 228, *Auscape cannot stand.*

**H. This Court Should Apply the Discovery Rule to Urbont's Federal Copyright Infringement Claim.**

Applying the discovery rule to copyright infringement claims is thus supported by (1) overwhelming authority evidencing a national consensus the discovery rule applies to copyright infringement claims; (2) a correct reading of the Supreme Court's decision in *TRW*; (3) the most recent decision by the Southern District and (4) the Second Circuit's statement that *Stone* and *Merchant* remain good law.

**III.    Application of the Discovery Rule Requires The Denial Of  Sony's Motion.**

Sony next argues that, even under the discovery rule, a plaintiff is only entitled to damages for infringing acts that occurred in the three years preceding the filing of the complaint. In support of this position, Sony cites cases which simply do not stand for the principle Sony asks this Court to adopt.

**A.  The Discovery Rule Means What It Says.**

The discovery rule means a claim does not accrue until a diligent person either knew or should have known about his injury.  Since no claim has accrued before the "discovery," the statute of limitations does not bar recovery for acts before discovery.  The statute of limitations only starts running at the time of discovery.  All discovered claims, no matter the date of their initial occurrence, are remediable during the statutory period following discovery.  *See Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004).

The *Polar Bear* court thoroughly explained the correct application of the discovery rule:

> § 507(b) permits damages occurring outside of the three-year window, so long as the copyright owner did not discover -- and reasonably could not have discovered -- the infringement before the commencement of the three-year limitation period. Because Polar Bear did not discover Timex's infringement until within three years of filing suit, Polar Bear may recover damages for infringement that occurred outside of the three-year window.

. . . "[I]n a case of continuing copyright infringements, an action may be brought for all acts that accrued within the three years preceding the filing of suit." The copyright plaintiff cannot, however, reach back beyond the three-year limit and sue for damages or other relief for infringing acts that he knew about at the time but did not pursue. Thus, we have the general rule that "[a] plaintiff's right to damages is limited to those suffered during the statutory period for bringing claims . . . ."

Importantly, *Roley* also signals that this general rule does not erect an impenetrable wall preventing recovery for infringement occurring prior to the three-year window. *Roley* interpreted the term "accrue," as it is used in § 507(b), to be the moment when the copyright holder "has knowledge of a violation or is chargeable with such knowledge." Synthesizing this definition of "accrue" with the language of § 507(b), the three-year clock begins upon discovery of the infringement. Because Roley was aware of the earlier infringement prior to the three-year limit for filing suit, those claims accrued outside the time allowed, and he was therefore prohibited from recovering damages for the earlier claims.

Thus, under *Roley*, the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances.

*Id.* at 706-07 (internal citations omitted); *See also* 3 NIMMER ON COPYRIGHT § 12.05[B], 12-135 (tolling statute of limitations until moment of discovery is "better" view of § 507(b)). Sony's proposition would be nothing more than the injury rule in disguise.

**B. Sony cites no authority disagreeing with *Polar Bear*.**

For its proposition, Sony quotes cases laying out the general standard that copyright infringement cases are governed by a three year statute of limitations and recovery outside the limitations period is not permitted. *See Merchant*, 92 F.3d at 56-57; *Stone*, 970 F.2d at 1050; *Salerno v. City University of New York*, 191 F. Supp. 2d 352, 356-57 (S.D.N.Y 2001). None of these cases, as quoted, are discussing the application of the discovery rule to damages.

These cases are dealing with the holding of *Taylor v. Merick*, 712 F.2d 1112, 1119 (7th Cir. 1983). In *Taylor*, the Seventh Circuit held if an infringing act occurred within the statutory period, a plaintiff could recover for all infringements even if those earlier infringements would

normally be barred by the statute of limitations.  *Id.*  This reaching back based on continuing infringement has been rejected by courts in the Second Circuit.  The opinions cited by Sony simply reflect this rejection of *Taylor*.  These decisions are unrelated to the application of the discovery rule and do not counsel for the result Sony asks this Court to now adopt.

### C.  The Allegations in the Complaint Establish Urbont Acted with Diligence in Protecting His Copyrights.

Sony next argues Urbont is not entitled to relief  prior to 2007 because a reasonably diligent person would have discovered the facts underlying his claim prior to May 21, 2010.  Such a decision is a factual one and improper in a motion to dismiss.  *See Twombly*, 550 U.S. at 570; *Kassner*, 496 F.3d at 237.

Under the discovery rule, a claim does not accrue until "a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." *Stone*, 970 F.2d at 1048.  In order to prevail on its motion, Sony must show Urbont has alleged a set of facts, taken in the light most favorable to Urbont, that would prohibit a trier of fact from determining Urbont was not reasonably unaware of the infringement.

In his Amended Complaint, Urbont asserts he lawfully registered his copyright with the Copyright Office and BMI.  Urbont also alleges he carefully reviewed his statements from BMI.

By registering with the Copyright Office, Urbont put the world on notice he owned the rights to the Iron Man Theme.  Anyone wishing to use  the Iron Man Theme could contact Urbont.  Likewise, by carefully reviewing his BMI statement, Urbont was aware of any public performance of his property.  Any significant change in the number of public performances would have put him on notice of a change that required investigation.  In the period before his discovery of Sony's actions, no one informed Urbont of the illegal use of his song nor was there any change in his BMI statements.

The reason no one informed Urbont his property was being illegally used by Sony was Sony's cover up of that fact. Sony attached to its Motion to Dismiss a copy of the album cover and liner notes of *Supreme Clientele*. (Sony memo Ex. 2) The first use of the Iron Man Theme Sony labeled as "INTRO." The second use of the Iron Man Theme Sony labeled as "IRON'S THEME – CONCLUSION." Sony clearly changed the title so Urbont would not be put on notice. Sony offers no indication on the packaging that Urbont authored or recorded either song.

This labeling prevented anyone from notifying Urbont his song had been improperly used. No one could look up the song in the Copyright Office, because the title of the song was changed obscuring its true identity.

Finally, Urbont's Iron Man Theme was not released as a single, received no airplay, and was not publicized as being on the album. While Sony points to publicity regarding the release of the album, there is notably no mention anywhere of the inclusion of Urbont's property, and, as noted above, Sony and Ghostface actually changed the name of the track to prevent its discovery. In short, the only way Urbont would have known of the use of his property would be to have purchased every album released, and listened to each track, to see if it uses his property. That is not reasonable.[4]

**D. There is No Precedent Allowing Dismissal of Urbont's Claims Prior to May 21, 2007 for Lack of Diligence.**

---

[4] While it is true a number of articles noted by Sony reference Ghostface's previous album, *Ironman*, there is no reasonable link between a reference to the title of a previous album and the unauthorized use of Urbont's Iron Man Theme in a different album. Requiring Urbont to investigate every cultural reference to Iron Man is, again, a hyper-vigilance requirement not supported by the law. Equally ludicrous is Sony's argument that the mention of *Supreme Clientele* in Billboard is somehow relevant. *Supreme Clientele* was included in Billboard's weekly charts and a picture of Ghostface was also published. Neither inclusion made reference to Iron Man and certainly no reference to the Iron Man Theme. Sony's exhibit shows *Supreme Clientele* listed in a group of 300 albums. Under Sony's argument, Urbont would have had to listen to each of these 300 albums in their entirety in order to be diligent. This is, quite frankly, silly.

Sony cites a number of cases asking the court to find a reasonable person would have been on notice *Supreme Clientele* contained the Iron Man Theme prior to May 21, 2007. None of these cases are applicable to the instant facts.

This court decided *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330 (S.D.N.Y. 2000). The court held an unfair competition claim against a comic book company for the use of a well known advertisement was time barred. *Id.* at 331, 334. This opinion is not only inapplicable because it was decided on a motion for summary judgment, but also because the two cases are not even remotely similar. After noting that D.C. Comics was the industry leader in comics, this Court explained:

> More importantly . . . [plaintiff] was 'a large advertiser in DC comic books, even at the time that the infringing work appeared.' [Plaintiff] cannot now, as a matter of law, profess ignorance of the publication of the very comic books in which it has placed millions of dollars of advertising over several decades.

*Id.*

This case stands for the proposition that one who advertises with the alleged infringer, and presumably knows of the content of that very material, cannot claim lack of notice. Here, of course, there is no allegation Ghostface is the "industry leader" in the music business, and no allegation Urbont advertised with Ghostface on the very album on which he claims his property was used.

Sony also cites two similar cases, *Goldberg v. Cameron*, 482 F. Supp. 2d 1136 (N.D. Cal. 2007) and *Manuel v. Paramount Pictures*, No. 01 Civ 814, 2001 U.S. Dist. LEXIS 16065 (S.D.N.Y. Sept. 26, 2001). In both these cases, plaintiffs made claims their movie scripts had been infringed by the *Terminator* and *Titanic* movies respectively. 482 F. Supp. 2d at 1141; 2001 U.S. Dist. LEXIS 16065, at *2. *Terminator* and *Titanic* are two of the most commercially successful films ever released. *Titanic* was released "amidst oceans of publicity." 2001 U.S.

Dist. LEXIS 16065, at *2. The courts found unreasonable plaintiffs being unaware of the movies. 482 F. Supp. 2d at 1148; 2001 U.S. Dist. LEXIS 16065, at *2.

Not only is the reasonableness of being unaware of the release or content of the Terminator movies or *Titanic* factually distinguishable from being unaware of the release of *Supreme Clientele*, but being aware of *Supreme Clientele* would not have been enough to discover the infringement. Instead, discovery would have required listening to both the first and last track on the album. There was no need to see *Terminator* or *Titanic* to be on notice of the content of those films. Both movies were widely advertised in print and on television. The advertising campaigns went to great lengths to indicate the films' content. There was no such advertising for *Supreme Clientele*.

The most closely applicable case Sony cites is *Williams v. Curington*, 662 F. Supp. 2d 33 (D.D.C 2009), a non-precedential district court case from another Circuit. *Williams*, however, has never been cited by the Southern District of New York for any proposition, decides a motion for summary judgment, *id.* at 37, and has been criticized for applying the wrong statute. *See* 1-OV NIMMER ON COPYRIGHT n.50.2 (2011) ("[The] court erroneously stated that infringement, starting in 2002, of a 1975 sound recording, arises pursuant to the 1909 Act."). In addition to criticism regarding the application of the wrong statute, the case was, quite frankly, wrongly decided. It is inconceivable that the publication date of a song can also be the date on which a reasonable person would have discovered the infringement, as that court stated. *Id.* at 38. Even on this point though, the *Currington* court relied on the plaintiff's status as a music industry insider with links to previous hip hop sampling. *Id.* at 37, 39. Urbont, on the other hand, is not a "music industry insider," but rather an 81 year old man whose work relates to television, movies, and stage. Urbont works as a composer which requires a familiarity with classical sources. It is

no more reasonable to expect Urbont to be familiar with *Supreme Clientele* than it is to expect

Ghostface to be familiar with Bela Bartok's Suite for Piano Opus 14.

Finally, Sony cites to *Webber v. Geffen.* 63 F. Supp. 2d 458 (S.D.N.Y. 1999). The court

there found a plaintiff should have known about the alleged infringement of his work at or near

the time the album, on which the alleged infringement was contained, was released. *Id.* at 465-

66. The plaintiff previously brought an action to enforce his rights in regard to songs that were

released by his former band, Guns N' Roses, around the same time as the later complained of

infringement. *Id.* The court held a reasonably diligent plaintiff would have, at that time of the

initial suit, investigated to see if Guns N' Roses was infringing on other songs the plaintiff co-

wrote. *Id.* at 465. This was especially true where one of the songs in question was registered in

the same copyright registration as the songs from the initial suit. *Id.* at 461.Nothing of this sort is

present under the instant facts.

## IV.    Urbont's State Law Claims Are Not Barred by the Statute of Limitations.

Sony argues Urbont's state law claims should be dismissed because the statute of

limitations has run. Urbont has pled three state law claims: common law copyright infringement,

unfair competition, and unfair competition/misappropriation. Each is governed by a three year

statute of limitations.

Urbont's state law claims are closely related. Urbont's claim for common law copyright

infringement is straightforward. Sony continues to sell an album which contains a work owned

by Urbont in violation of Urbont's rights. They have recently re-released it, and have licensed it

for sale in connection with downloads and ringtones. Urbont's unfair competition claim contains

the same allegations, but also alleges Ghostface used the inclusion of the Iron Man Theme in

order to associate himself with the fictional character Tony Stark in order to build his brand and

build profits for himself and Sony. Urbont's misappropriation/unfair competition claim also alleges the same facts, and asserts Sony misappropriated Urbont's valuable business asset by including it on *Supreme Clientele*. These misuses have and continue to harm Urbont's property and reputation. As discussed below, each have rolling statutes of limitation, and the title given to the claims are irrelevant.

**A. Each Wrongful Act by Sony Began the Running of a New Statute of Limitations.**

Sony argues the state law statute of limitations began to run on the date of the initial release of *Supreme Clientele*. To the contrary, under New York law, each of Sony's illegal actions was a separate wrong triggering a new statute of limitations.

In *Sporn v. MCA Records*, the New York Court of Appeals held:

> For the purposes of the Statute of Limitations, if the action is one for conversion, the time period will run from when that cause of action accrued -- that is, when the conversion occurred. If the action is deemed one for trespass, then the cause of action will accrue at the time the trespass occurs. Trespasses of a continuing character may be considered a continuing trespass which would give rise to successive causes of action each time there is an interference with a person's property so that relief would not be barred by the Statute of Limitations for interferences occurring within three years of the commencement of the action.

448 N.E.2d 1324, 1327 (N.Y. 1983).

> If a review of the pleadings indicates that the defendant merely interfered with the plaintiff's property and thereby his property rights, then the complaint will be properly construed as an action to recover for trespass[;] . . . [i]f, however, the conduct the plaintiff seeks to recover for amounts to the destruction or taking of the property, then the action is properly deemed one for conversion.

*Id.* at 1326-27.

In the instant case, Urbont has pled facts which establish Sony trespassed on his property and the facts alleged in the Amended Complaint do not contemplate a conversion tort.

**B. Sony's Actions Trespassed on Urbont's Rights.**

In *Sporn* the court explained trespass by analogy stating "'[i]f defendant hits plaintiff's horse repeatedly, plaintiff has a new cause of action upon each striking; but if defendant destroys plaintiff's horse, or takes it and claims it as his own, plaintiff's right accrues immediately and he must sue within the period of limitation measured from that date -- or never.'" *Id.* at 487 (quoting *Sachs v. Cluett Peabody & Co.*, 39 N.Y.S.2d 853, 847 (N.Y. App. Div. 1943)).

At least one New York court has specifically held copying of information is not conversion. *A & G Research, Inc. v. GC Metrics, Inc.*, No. 05870/2007, 2008 NY Slip Op 51016U, at *30-31 (N.Y. Sup. Ct. 2008). In *A & G Research*, the defendants uploaded business information from a computer for their own use. *Id.* at 30. The court held one of the essential elements of conversion was absent, namely that the owner of the property was excluded from using the property. *Id.* "Since the information was not deleted from A & G's computers, A & G was not excluded from the use of the information." *Id.*

A Southern District of New York court made the same finding, holding misappropriating intellectual property, but not robbing the owner of its use, was an ongoing harm similar to trespass. *Greenlight Capital, Inc. v. Greenlight (Switzerland) S.A.*, No. 04 Civ 3136, 2005 U.S. Dist. LEXIS 2 (S.D.N.Y. Jan. 3, 2005). At issue in the case was the defendant's use of the trademark name "Greenlight." *Id.* at 28. The court held "trademark infringement is a continuing tort." *Id.* at 24 (citing *De Medici v. Lorenzo De Medici, Inc.*, 475 N.Y.S.2d 391, 393 (N.Y. App. 1984); *Barry Corp. v. Mushroom Makers*, 436 N.Y.S.2d 927, 930 (N.Y. Sup. Ct. 1981)). Likewise, the court found the related unfair competition claim was a continuing tort. *Id.* at 28. ("There is no similar singular act of misappropriation in this case . . . . Instead, Greenlight

Capital's . . . claim is based on the same on-going activity that underlies its trademark infringement claims: . . . [the] use[] [of] a[] . . . similar name in the same industry.").[5]

This analysis is consistent with the way New York treats claims of misappropriation of trade secrets.

> Accrual of a claim for trade secret misappropriation occurs as follows: If a defendant misappropriates and discloses a trade secret, he becomes liable to plaintiff upon disclosure. On the other hand, if the defendant [misappropriates and] keeps the secret confidential yet makes use of it to his own commercial advantage, each successive use constitutes a new actionable tort for purposes of the Statute of Limitations.

*Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.*, 297 F. Supp.2d 463, 488 n.20 (N.D.N.Y. 2003) (quoting *Architectronics, Inc. v. Control Systems, Inc.*, 935 F. Supp. 425, 433 (S.D.N.Y. 1996)) (citing *Lemelson v. Carolina Enter., Inc.*, 541 F. Supp. 645, 659 (S.D.N.Y. 1982)).

The *A & G Research* and *Greenlight* decisions demonstrate that copying for exploitation purposes is a trespass action under New York law. Under these types of actions, property is copied and wrongfully exploited. However, the property is also still available for exploitation by the rightful owner. Like the analogy in *Sporn* this is damage, but it is not destruction.

The claims in *Greenlight* stemmed from the misuse of intellectual property. The misuse did not rob the owner of its ability to use the intellectual property. Greenlight Capital could still use its trademark while the trademark was also being used by GreenLight (Switzerland). Urbont could still exploit his copyrights while his intellectual property was being exploited by Sony. In

---

[5] Other courts applying New York law have likewise recognized that copyright infringement is a trespass, and a plaintiff may recover damages under New York law within the three year statutory period, even if the original infringement occurred more than three years earlier. *Bridgeport Music, Inc., et al., v. Justin Combs Publishing, et al.*, 507 F.3d 470 (6th Cir. 2007), presented a case factually similar to this action. There, in 1994, Bad Boy Records released Notorious B.I.G.'s first album *Ready To Die*, which contained an unlawful sample of the plaintiffs' musical composition and sound recording *Singin' In The Morning*. Id. at 476-477. Like here, the sound recording claim arose under New York common law because *Singin' In The Mornin* was first fixed on a master recording prior to February 15, 1972. *Id.* Plaintiffs' did not file the action until 2001. Id. Although the action was, therefore, filed more than three years after *Ready To Die's* release, the plaintiff was allowed to pursue the same common law claims asserted herein because the infringement continued through the date the action was filed. Unfortunately, the reported Sixth Circuit decision does not analyze the statute of limitations issue.

*Greenlight* the lawful owner of the trademark lost value, because there was confusion in the

market over the reputation Greenlight Capital had spent time, effort, and money building.

Likewise the Iron Man Theme was damaged by improperly being used without recognition of the

time, effort, and money Urbont spent creating it and its value. In both *Greenlight* and the instant

case the harms continued without a singular act converting either plaintiff's property.

The instant facts are also analogous to cases of trade secret misappropriation. Once a

trade secret has been exposed it loses all its value. By its very nature a trade secret is valuable

because of its secrecy. When a trade secret is exposed, the rightful owner of the trade secret

loses his possession of its value. This is similar to conversion. However, when a party

wrongfully uses a trade secret without exposing it, the party does not rob the owner of the value

of the trade secret. Instead the wrongful use diminishes the value of the trade secret. This action

is similar to trespass and each use by the misappropriating party is a new tort.

Sony's use of the Iron Man Theme has not robbed Urbont of all of its value. As

discussed above, Urbont can still exploit the Iron Man Theme after Sony's wrongful use of it.

However, the value of the Iron Man Theme was diminished by every wrongful exploitation.

**C. Urbont Has Not Alleged Conversion of His Property.**

"To establish a cause of action in conversion, the plaintiff must show legal
ownership or an immediate superior right of possession to a specific identifiable
thing and must show that the defendant[s] exercised an unauthorized dominion
over the thing in question . . . to the exclusion of the plaintiff's rights" "A
conversion takes place when someone, intentionally and without authority,
assumes or exercises control over personal property belonging to someone else,
interfering with that person's right of possession . . . [.] Two key elements of
conversion are (1) plaintiff's possessory right or interest in the property . . . and
(2) defendant[s'] dominion over the property or interference with it, in derogation
of plaintiff's rights"

*Palermo v. Taccone*, 913 N.Y.S.2d 859, 863 (N.Y. App. Div. 2010) (internal citations

omitted); *see also New York v. Seventh Regiment Fund, Inc.*, 774 N.E.2d 702, 710 (N.Y. 2002)

("custody of goods, [that] does not 'exclude the owner from the exercise of his rights' is not . . .

conversion.'") (quoting *Bradley v. Roe*, 27 N.E.2d 35, 38 (N.Y. 1940)) .

Sony cites primarily to *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172 (2d Cir.

2000) in trying to show Urbont's state law claims are conversion type actions. *SongByrd*

involved an alleged theft of a master recording. *Id.* at 174-75. The *Songbyrd* court held this was

an action for the "wrongful conversion of a chattel." *Id.* at 181.

In *SongByrd* the plaintiff owned master recordings that were in the possession of the

defendant. *Id.* at 174. After the defendant's death, his estate sold the master recordings to a third

party. *Id.* at 175. The third party then held itself out as the owner of the master recordings. *Id.*

The plaintiff filed suit alleging ownership. *Id.* *SongByrd* is a case about the taking of one's

property with the intent to permanently deprive the person of the property; it is not a case of

trespass.[6]

The other type of case cited by Sony is more akin to the *Norbrook Labs* case discussed

above. In *Opals on Ice Lingerie v. BodyLines, Inc.*, 425 F. Supp. 2d 286, 296 (E.D.N.Y. 2004),

the court considered an unfair competition claim. "Opals designs, manufactures and sells

women's lingerie. BodyLines sells silicone breast enhancement inserts. . . . [T]he parties

discussed . . . collaborating to produce and sell women's undergarments designed to hold the

silicone enhancements marketed by BodyLines." *Id.* at 288. The parties reached some

agreement regarding this collaboration. *Id.* Under the agreement, Opals sent sample designs and

products to BodyLines. *Id.* Instead of collaborating, BodyLines began to sell items substantially

---

[6] Other cases cited by Sony fall within the *SongByrd* rubric. *See* Catlin v. Manilow, 170 A.D.2d 357, 358
(N.Y. Sup. Ct. 1991) (holding a cause of action was not a continuing trespass where "the language used in the
complaint clearly demonstrates the plaintiff intended to plead a cause of action for conversion").

similar to the designs and samples. *Id.* Opals then brought suit alleging among other causes, a cause of action for unfair competition. *Id.*

The court analyzed these facts and found the cause of action was a conversion type action. *Id.* at 297. This decision is based on the total loss of value in the designs. Once Opal's designs were made and sold by BodyLines, Opal's lost all its value in them. Just as when a trade secret is exposed, the exposure of Opal's designs began the running of the statute of limitations. *See Norbrook Labs. Ltd.*, 297 F. Supp.2d at 488 n.20.

Urbont's ownership interest allows him to exploit his copyrights. On the day before *Supreme Clientele* was released, Urbont could license the master recording and musical composition to anyone he saw fit. On the day after *Supreme Clientele* was released, Urbont still had the ability to license the property to anyone he chose. In fact, during the period between the release of *Supreme Clientele* and Urbont's discovery of Sony's actions, Urbont did license the song for use in the *Iron Man* live-action film. There was no change in Urbont's relationship to the property with Sony's initial infringement. Instead, the release of *Supreme Clientele* interfered with the property itself. Sony copied Urbont's property, but it did not exclude Urbont from it.

In *SongByrd*, the plaintiff did not have the ability to exploit the master recordings, because the plaintiff was excluded from those master recordings. This is the difference between claims which accrue only once, like the claim in *SongByrd*, and those, like Urbont's claim, which accrue with each new trespass. The instant action is instead one for trespass.

**D. Urbont's State Law Claims Are Viable As Sony has Continued to Tortuously Harm Urbont During the Limitations Period.**

Under New York law, wrongs that trespass against a plaintiff's property trigger a new statute of limitations each time a defendant illegally acts. In the instant case, Urbont has pled

facts which establish Sony trespassed on his property; the facts alleged in the Amended Complaint do not contemplate a conversion tort; and no authority exists for the proposition each of Sony's wrongful acts is not a new tort with its own statute of limitations.  (Am. Cmplt. ¶ 48-69).

## V.    Administrative Withdrawal

Urbont's amended Complaint does not contemplate a cause of action for an accounting or raise the issue of equitable tolling due to fraudulent concealment.  Urbont has withdrawn those issues.

## <u>Conclusion</u>

For the foregoing reasons, Plaintiff Jack Urbont respectfully requests the Court deny Sony's Motion to Dismiss.

Dated: August 26, 2011                              Respectfully submitted,


By:    /s/ Richard S. Busch

Richard S. Busch (SB 5613)
KING & BALLOW
315 Union Street, Suite 1100
Nashville, Tennessee 37201
Telephone:  (615) 259-3456
Facsimile:   (615) 726-541

Kenneth E. Gordon (KG 5703)
GORDON, GORDON & SCHNAPP, P.C.
437 Madison Avenue, 39th Floor
New York, New York 10022
Telephone:  (212) 355-3200
Facsimile:   (212) 355-3292

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of August, 2011, I electronically filed the foregoing Document with the Clerk of the Court using the ECF System which sent notification of such filing to the following:

Mark Reiner, Esq.
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-278-2000
Facsimile: 212-278-1733

Raymond A. Mascia, Jr., Esq.
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-278-2000
Facsimile: 212-278-1733

I hereby certify that on the 26th day of August, 2011, I served the foregoing Document by placing it in the U.S. Mail and/or by attempting in person service to the following:

Denis Coles
183 Greenleaf Avenue
Staten Island, New York, NY 10310


/s/ Richard S. Busch