UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
JACK URBONT,

                    Plaintiff,                    **MEMORANDUM AND ORDER**

        - against -                                 11 Civ. 4516 (NRB)

SONY MUSIC ENTERTAINMENT d/b/a
EPIC RECORDS, DENNIS COLES p/k/a
GHOSTFACE KILLAH, and RAZOR SHARP
RECORDS, LLC,

                    Defendants.
---------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


        Plaintiff Jack Urbont ("Urbont") brings the instant suit

against defendants Dennis Coles p/k/a Ghostface Killah, Sony

Music Entertainment d/b/a Epic Records, and Razor Sharp Records,

LLC (together with Sony Music Entertainment, "Sony"), alleging

infringement of his rights to the musical composition and sound

recording of the "Iron Man Theme." Presently before the Court is

Sony's motion to dismiss as untimely: (i) Urbont's federal

copyright infringement claims as they relate to alleged acts of

infringement occurring prior to May 21, 2007; and (ii) all of

Urbont's state law claims. For the reasons stated below, Sony's

motion to dismiss is granted with respect to Urbont's federal

claims and denied with respect to his state law claims.[1]

---

[1] As of the filing of Sony's motion to dismiss on August 5, 2011, Urbont had
yet to effect service of process on defendant Coles, and as of the date of
this Memorandum and Order, Urbont and Coles continue to dispute whether Coles

# BACKGROUND[2]

Urbont is a "lifelong songwriter, conductor, orchestrator and music producer." (AC ¶ 5.) His work has spanned across the realms of theatre, film, radio, and television. (Id. ¶ 10.) Urbont's television work in particular has been extensive, having composed the themes and lyrics for The Guiding Light, One Life to Live, and General Hospital and developed music for shows including All My Children, That 70s Show, The Oprah Winfrey Show, and Live with Regis and Kathie Lee. (Id. ¶ 11.) In fact, Urbont earned Broadcast Music, Inc.'s TV/Film Pioneer Award in 1986. (Id. ¶ 15.)

Urbont developed the "Iron Man Theme" as the theme song for the "Iron Man" segment of the 1960s television show The Marvel Super Heroes. (Id. ¶ 5.) Urbont asserts that he has complied with all federal laws pertinent to the musical composition of the "Iron Man Theme," most recently having filed a copyright renewal notice for the song in 1994. (Id. ¶ 21.) Urbont also asserts that he has a valid, common law copyright in the sound

---

has been properly served. The instant motion to dismiss is therefore only on behalf of Sony, although the fundamental legal analysis herein would be broadly applicable.

[2] This background is derived from the amended complaint ("AC"), filed August 26, 2011, and the exhibits annexed to Sony's Notice of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("D. Ex.").

recording of the "Iron Man Theme" under New York law.[3] (Id. ¶ 22.)

Urbont suggests that he has actively protected his interests in the "Iron Man Theme." He claims to have taken action in 1995 when he believed New World Entertainment, Ltd. and Marvel Entertainment Group, Inc. were violating his rights, and he notes that the musical composition of the "Iron Man Theme" was properly licensed and used by Paramount Pictures in the 2008 film Iron Man. (Id. ¶¶ 18, 31.)

Defendant Coles is a well-known "musician, performer, and producer," formerly a member of the group the Wu-Tang Clan. (Id. ¶ 8; D. Ex. 3.) In 2000, Coles released his second solo album, Supreme Clientele. (D. Ex. 3.) Urbont alleges that Coles "copied verbatim" the sound recording and musical composition of the "Iron Man Theme" on the first and last tracks of Supreme Clientele, titled "Intro" and "Iron's Theme – Conclusion," respectively. (AC ¶¶ 23, 37.) Urbont further alleges that Sony, which released the album, has received substantial revenue from the distribution, reproduction, and display of these infringing works. (Id. ¶¶ 24, 26.)

---

[3] Thus, Urbont's federal claims pertain to the musical composition of the "Iron Man Theme," while his state claims pertain to the sound recording of the "Iron Man Theme." This distinction arises because the Copyright Act does not currently apply to sound recordings created prior to February 15, 1972. See Capitol Records, Inc. v. Naxos of Am., Inc., 4 N.Y.3d 540, 555-56 (2005); see also Melville B. Nimmer & David Nimmer, 4 Nimmer on Copyright § 2.10[A][1] (2011).

Although he does not specify a precise date, Urbont implies that he first learned of the alleged infringement in late 2009 or early 2010. (Id. ¶ 39 ("Urbont learned of the wrongful use . . . shortly before contacting defendants about their actions."); Tr. of Oral Arg. at 11:17-12:3.) Urbont eventually entered into a tolling agreement with defendants which stopped the running of the statute of limitations on his claims as of May 21, 2010. (AC ¶ 39.)

Urbont filed a complaint in the instant matter on June 30, 2011 and filed the AC on August 29, 2011.[4] The AC asserts claims for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq., as well as claims under New York common law for copyright infringement, unfair competition, and misappropriation. Sony now moves to dismiss the portion of Urbont's Copyright Act claims that stems from alleged acts of infringement prior to May 21, 2007 (i.e., three years prior to the tolling agreement), and all of Urbont's state law claims, contending that these claims are untimely under the applicable statutes of limitations.

---

[4] The AC was filed on the same day that Urbont filed his opposition brief to the motion to dismiss. Even though the AC was thus filed subsequent to the motion, with the parties' consent, we apply the motion to dismiss to the AC.

**DISCUSSION**

## I.  **Pleading Standards**

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "[f]actual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). Ultimately, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. This pleading standard applies in "all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1953 (2009) (internal quotation marks omitted).

## II. **Copyright Act Claims**

Civil actions under the Copyright Act must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The parties advance competing interpretations of the term "accrued" under this provision.

Under the injury rule, advanced by Sony, a claim accrues at the time of each act of infringement, regardless of the copyright holder's knowledge of the infringement. In contrast, under the discovery rule, advocated by Urbont, a claim for copyright infringement does not accrue until the aggrieved party knows or has reason to know of the injury that forms the basis of the claim.

Neither the Supreme Court nor the Second Circuit has ruled on the appropriate accrual rule for federal copyright infringement claims. In Stone v. Williams, 970 F.2d 1043 (2d Cir. 1992), the Second Circuit did interpret 17 U.S.C. § 507(b), but it did so in the context of a copyright ownership claim rather than a copyright infringement claim. The court applied the discovery rule to the ownership claim in question, see id. at 1048-49, and the Second Circuit has applied the discovery rule in the ownership context on at least three subsequent occasions. See Kwan v. Schlein, 634 F.3d 224, 228 (2d Cir. 2011);[5] Decarlo v. Archie Comic Publ'ns, 11 F. App'x 26, 29 (2d Cir. 2001); Merchant v. Levy, 92 F.3d 51, 56 (2d Cir. 1996).

---

[5] In Kwan, the Second Circuit also addressed the timeliness of an infringement claim, but the infringement claim in question was premised on a disputed underlying ownership claim. See Kwan, 634 F.3d at 229. The court held that when the underlying ownership claim is time-barred, the derivative infringement claim is time-barred as well. See id. at 230. However, the court did not address the appropriate accrual rule for stand-alone infringement claims.

Following <u>Stone</u>, district courts in this Circuit applied the discovery rule to both ownership and infringement claims until Judge Kaplan's 2004 decision in <u>Auscape International v. National Geographic Society</u>, 409 F. Supp. 2d 235 (S.D.N.Y. 2004). In <u>Auscape</u>, Judge Kaplan held that the injury rule is in fact the appropriate rubric to be applied to infringement claims under the Copyright Act. <u>See</u> <u>id.</u> at 247. Judge Kaplan reached this holding after considering recent Supreme Court jurisprudence – particularly the Court's 2001 opinion in <u>TRW Inc. v. Andrews</u>, 534 U.S. 19 (2001) – which in his view counseled against application of the discovery rule except in limited circumstances, and after thoroughly exploring the legislative history of the Copyright Act's civil limitations provision. <u>See</u> <u>id.</u> at 242-47.

Since <u>Auscape</u>, a majority of district courts in the Southern District of New York have followed Judge Kaplan's lead and applied the injury rule to infringement claims. <u>See, e.g.</u>, <u>Harris v. Simon & Schuster, Inc.</u>, 646 F. Supp. 2d 622, 630 (S.D.N.Y. 2009); <u>Broadvision Inc. v. Gen. Elec. Co.</u>, No. 08 Civ. 1478 (WHP), 2009 WL 1392059, at *6 (S.D.N.Y. May 5, 2009); <u>Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Grp., PLC</u>, No. 05 Civ. 8665 (GEL), 2008 WL 4449412, at *10 (S.D.N.Y. Sept. 30, 2008); <u>CA, Inc. v. Rocket Software, Inc.</u>, 579 F. Supp. 2d 355, 360 (S.D.N.Y. 2008); <u>Vasquez v. Torres-Negron</u>, No. 06 Civ. 619 (CM),

2007 WL 2244784, at *7 (S.D.N.Y. July 11, 2007); Roberts v. Keith, No. 04 Civ. 10079 (CSH), 2006 WL 547252, at *3 (S.D.N.Y. Mar. 7, 2006). But see, e.g., Psihoyos v. John Wiley & Sons, Inc., No. 11 Civ. 1416 (JSR), 2011 WL 4916299, at *5 (S.D.N.Y. Oct. 14, 2011); Newsome v. Brown, No. 01 Civ. 2807 (TPG), 2005 WL 627639, at *5 (S.D.N.Y. Mar. 16, 2005). Outside of the Second Circuit, however, the discovery rule has remained the consensus approach of courts to have addressed the issue. See, e.g., William A. Graham Co. v. Haughey, 568 F.3d 425, 437 (3d Cir. 2009); Warren Freedenfeld Assocs., Inc. v. McTigue, 531 F.3d 38, 44 (1st Cir. 2008); Groden v. Allen, 279 F. App'x 290, 294 (5th Cir. 2008); Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 390 (6th Cir. 2007); Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 705-06 (9th Cir. 2004); Gaiman v. McFarlane, 360 F.3d 644, 653 (7th Cir. 2004).

For the reasons outlined below, we find the arguments advanced in favor of the injury rule to be persuasive and thus follow the majority approach within this jurisdiction.

## A. Second Circuit Precedent

As an initial matter, we note that the previously referenced Second Circuit line of cases applying the discovery rule to copyright ownership claims does not compel application of the discovery rule in the present context. Although the same limitations provision governs all civil claims brought under the

Copyright Act, the Second Circuit has repeatedly emphasized the distinct nature of the accrual of infringement and ownership claims. Whereas an ownership claim accrues only once, each act of infringement triggers a separate claim for relief and thus a separate accrual period attendant to that claim. See Kwan, 634 F.3d at 228 ("An ownership claim accrues only once, when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right. . . . By contrast, an infringement action may be commenced within three years of any infringing act . . . ." (internal quotation marks, citations, and alteration omitted); see also Merchant, 92 F.3d at 57 n.8; Stone, 970 F.2d at 1049-50. It would be entirely consistent with this distinct treatment of the nature and scope of the two types of claims to provide for different rules of accrual tailored to the particular manner in which such claims accrue.[6]

### B. **Text and Structure of Copyright Act**

Urbont contends that despite any differences between ownership and infringement claims, the "text and structure" of

---

[6] For instance, the discovery rule may be more appropriate in the context of an ownership claim, where such a claim accrues only once and the aggrieved party is in greater danger of being entirely without redress, as compared to an infringement claim, where the aggrieved party will often have multiple claims for relief based on repeated acts of infringement. In addition, given that an aggrieved party will often learn of related acts of infringement at a single point in time, application of the discovery rule would seem to undercut the purpose of providing for separate claims for each act of infringement. That is, if the discovery rule were to apply, in situations in which a plaintiff learned (or should have learned) of related acts of infringement all at once, it would often be the case that either all of the plaintiff's claims would be timely or none of the claims would be timely. Such a result would not pass under the injury rule.

the Copyright Act compel application of the discovery rule to all civil copyright claims. Specifically, Urbont points to the distinct language employed in the Copyright Act's criminal and civil limitations provisions. Whereas civil claims must be "commenced within three years after the claim accrued," 17 U.S.C. § 507(b), criminal actions must be "commenced within [five] years after the cause of action arose," id. § 507(a). Urbont contends that we must assume from this difference in language that Congress intended the provisions to carry different meanings, and because the Supreme Court had previously interpreted language similar to that in the criminal provision to embody an injury rule, we can infer that Congress intended the civil provision to embody a discovery rule. See William A. Graham Co., 568 F.3d at 434-35 (3d Cir. 2009).

        This argument is not without appeal, but we ultimately find it unconvincing. The term "accrue" does not, on its face, compel an understanding consistent with the discovery rule. If anything, the term suggests that the limitations period begins to run as soon as the plaintiff acquires the right to sue, regardless of the plaintiff's knowledge of that right. See Webster's Third New International Dictionary 13 (1966) (defining accrue as "to come into existence as an enforceable claim: vest as a right"). This conclusion holds true even when the term is read in juxtaposition to the use of "arose" in the criminal

limitations provision, as the term "arose" is itself ambiguous. Cf. TRW, 534 U.S. at 32 (interpreting "arises" in a statute of limitations and finding that the dictionary definition of the term could be read to support either an injury rule or a discovery rule).

Moreover, the legislative history of 17 U.S.C. § 507(b) undercuts the notion that Congress intended the difference in terminology between the two provisions to have a substantive implication. At the time that Congress enacted 17 U.S.C. § 507(b), the limitations period under the criminal provision was also three years. The legislative history is devoid of any discussion of a desire to have distinct treatment of the civil and criminal limitations periods, and, in fact, the Senate Report indicated: "With respect to the question of having equal criminal and civil statutes of limitations the committee understands that actions brought under the criminal copyright provisions are extremely rare. Therefore, the committee sees no substantial reason for not having statutes of equal periods for both criminal and civil copyright actions." S. Rep. No. 85-1014, at 2 (1957), reprinted in 1957 U.S.C.C.A.N. 1961, 1962. This statement belies the notion that Congress purposively intended for the two limitations periods to operate in different manners.

As the statutory text does not compel either of the parties' interpretations, we must look to additional factors in reaching our determination.

**C. Supreme Court Jurisprudence**

Recent Supreme Court case law provides substantial guidance as to the suitability of reading the discovery rule into statutes of limitations. In TRW, the Supreme Court interpreted the accrual of claims under the Fair Credit Reporting Act ("FCRA"). The FCRA contains a general limitations provision as well as an exception for willful misrepresentation, the latter allowing for claims to be brought within two years after the discovery of a willful misrepresentation. See TRW, 534 U.S. at 22 (citing 15 U.S.C. § 1681p). The Court rejected the suggestion that the general limitations provision should be read to incorporate a discovery rule, reasoning that such an interpretation "would in practical effect render [the willful misrepresentation] exception entirely superfluous in all but the most unusual circumstances." Id. at 28-29.

In reaching this holding, the Court also cast disfavor on any presumption in favor of the discovery rule as a general matter. The Court noted that it had "never endorsed the . . . view that Congress can convey its refusal to adopt a discovery rule only by explicit command," and it highlighted that other than in cases of fraud or concealment, it has recognized a

discovery rule only in two contexts - latent disease and medical malpractice – "where the cry for such a rule is loudest." Id. at 27-28 (internal quotation marks and alteration omitted).

In Merck & Co. v. Reynolds, 130 S. Ct. 1784 (2010), the Court again emphasized the limited circumstances under which a discovery rule should be considered appropriate. The Court noted that the discovery rule is "an exception to the general general limitations rule that a cause of action accrues once a plaintiff has a 'complete and present cause of action.'" Id. at 1793 (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201, (1997)). The Court then explained that the discovery rule was crafted specifically for claims of fraud because, in such circumstances, "a defendant's deceptive conduct may prevent a plaintiff from even knowing that he or she has been defrauded." Id. (alteration omitted). The Second Circuit has recently taken heed of the Merck Court's guidance, reiterating that the discovery rule is an exceptional approach suited for cases alleging inherently concealed conduct such as fraud. See SEC v. Gabelli, 653 F.3d 49, 59 (2d Cir. 2011) ("As a general matter, [the discovery] rule does not govern the accrual of most claims because most claims do not involve conduct that is inherently self-concealing.").

These precedents strongly counsel against applying the discovery rule to claims of copyright infringement. In stark

contrast to claims of fraud, latent disease, or medical malpractice, acts of copyright infringement are not "inherently self-concealing" but rather are open and notorious in nature. In fact, the Senate Report issued in 1957 upon passage of the Copyright Act's civil limitations provision noted that "due to the nature of publication of works of art[,] generally the person injured receives reasonably prompt notice or can easily ascertain any infringement of his rights." S. Rep. No. 85–1014, at 2, reprinted in 1957 U.S.C.C.A.N. at 1962.

"[T]he cry for" a discovery rule in the infringement context is thus rather subdued, and as such, it would seem appropriate to apply the "general limitations rule" that a claim accrues when a plaintiff has a "complete and present cause of action." Merck, 130 S. Ct. at 1793 (internal quotation marks omitted). In the infringement context, this occurs "at the time of the infringement itself." Auscape, 409 F. Supp. 2d at 247.

### D. **Potential for Equitable Tolling**

Another factor weighing in favor of the injury rule is the possibility of equitable tolling of infringement claims. As noted by Judge Kaplan in Auscape, the possibility of such tolling is highly probative of Congress' intent in enacting the limitations provision. The legislative history of 17 U.S.C. § 507(b) is replete with discussion over whether Congress should have enumerated specific circumstances in which equitable

tolling would be granted for civil copyright actions, such as in situations of fraudulent concealment. See, e.g., S. Rep. No. 85-1014, at 2, reprinted in 1957 U.S.C.C.A.N. at 1962-63. If Congress had envisaged that a discovery rule would govern civil copyright claims, statutory exceptions for fraudulent concealment or other instances in which a plaintiff was justifiably ignorant of his claim would have been superfluous. See Vasquez, 2007 WL 2244784, at *6; Auscape, 409 F. Supp. 2d at 246-47. "In other words, if an infringement claim would not accrue until the copyright holder knew of the infringement, the question whether the holder's ignorance was attributable to simple ignorance or concealment would have been immaterial." Auscape, 409 F. Supp. 2d at 247.

Although Congress ultimately did not enumerate grounds for equitable tolling, this choice was not motivated by a desire to adopt a discovery rule but rather was attributable to Congress' view that "federal district courts, generally, recognize these equitable exceptions anyway." S. Rep. No. 85-1014, at 2, reprinted in 1957 U.S.C.C.A.N. at 1963. (quoting H.R. Rep. No. 85-150, at 2 (1957)). As Congress had hoped, courts have indeed continued to allow for the possibility of equitable tolling in the context of infringement claims. See, e.g., Broadvision, 2009 WL 1392059, at *6-7; see also Melville B. Nimmer & David Nimmer, 4 Nimmer on Copyright § 12.05[B][3] (2011).

In our view, the possibility of equitable tolling, particularly for cases of fraudulent concealment, works in concert with the injury rule to create a sensible regime under which infringement claims accrue in a predictable and consistent manner and yet plaintiffs may be excused for ignorance of their claims if the defendants are culpable for intentionally concealing the existence of those claims.[7] In this regard, it should be noted that Urbont expressly withdrew any claim for equitable tolling due to fraudulent concealment in his opposition brief to the motion to dismiss. (Mem. of Law. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Mem.") at 24.)

**E. Summary**

After considering the legislative history of 17 U.S.C. § 507(b), the availability of equitable tolling, and the recent Supreme Court and Second Circuit guidance on the limited applicability of the discovery rule, we hold that the injury

---

[7] Our conclusion is supported by the Second Circuit's discussion of the fraudulent concealment doctrine in Gabelli, in which the court highlighted the distinction between the fraudulent concealment doctrine and the discovery rule:

> The fraudulent concealment doctrine . . . is an equitable tolling doctrine, not an accrual doctrine. Under the fraudulent concealment doctrine, even when a claim has already accrued, a plaintiff may benefit from equitable tolling in the event that the defendant took specific steps to conceal her activities from the plaintiff. Thus, whereas the discovery rule does not ordinarily apply to non-fraud claims (as it is generally expected that a plaintiff will be able to discover the conduct underlying non-fraud claims), the fraudulent concealment doctrine may be used to toll the limitations period for non-fraud claims where the plaintiff is able to establish that the defendant took affirmative steps beyond the allegedly wrongful activity itself to conceal her activity from the plaintiff.

Gabelli, 653 F.3d at 59-60.

rule is the appropriate rubric for the accrual of infringement claims under the Copyright Act. Thus, Urbont is time-barred from bringing federal copyright claims for acts of infringement occurring prior to May 21, 2007, that is, three years prior to the effective date of the tolling agreement.

## III. **State Law Claims**

Sony contends that Urbont's state law claims for common law copyright infringement, unfair competition, and misappropriation should be dismissed in their entirety. Urbont concedes that his state law claims for acts occurring prior to May 21, 2007 are untimely,[8] but he argues that he is not barred from pursuing common law claims for acts occurring subsequent to this date.

The parties agree that N.Y. C.P.L.R. § 214(4) sets forth the applicable statute of limitations for Urbont's state law claims. Under this provision, a three-year statute of limitations applies to "an action to recover damages for an injury to property." N.Y. C.P.L.R. § 214(4).

There is surprisingly scant case law addressing the accrual of New York common law claims that are predicated on an underlying copyright infringement. We find guidance principally from the New York Court of Appeals' decision in Sporn v. MCA Records, Inc., 58 N.Y.2d 482 (1983). In Sporn, the plaintiff

---

[8] Plaintiff's counsel tentatively made this concession at oral argument and then confirmed this position in a letter to the Court dated March 19, 2012. (Tr. of Oral Arg. at 21:2-10; 31:8-16.)

alleged that he had the right to recover the master recording of a song he had developed but that a third party had wrongfully retained possession of the recording. See id. at 485-86. That third party then licensed use of the song to the defendant. See id. at 486. The court characterized the plaintiff's cause of action as an allegation that the defendant had wrongfully used and misappropriated the plaintiff's property – the master recording. Id. at 487.

The court determined that whether the plaintiff's claims were time-barred under N.Y. C.P.L.R. § 214 depended on whether the allegations were properly classified as claims for trespass or conversion. If the action were deemed one for trespass, the plaintiff would have separate causes of action for each time that the defendant interfered with the property. See id. at 488. On the other hand, if the action were one for conversion, the plaintiff would have just one cause of action running from the date that the conversion occurred. See id.

The court explained that an action should be treated as one for trespass if the "defendant merely interfered with the plaintiff's property," whereas the action should be considered one for conversion if "the conduct the plaintiff seeks to recover for amounts to the destruction or taking of the property." Id. The court illustrated this distinction with the following example: "If defendant hits plaintiff's horse

repeatedly, plaintiff has a new cause of action upon each striking; but if defendant destroys plaintiff's horse, or takes it and claims it as his own, plaintiff's right accrues immediately and he must sue within the period of limitation measured from that date – or never." Id. at 487 (internal quotation marks omitted).

The court held that the plaintiff's action was properly classified as one for conversion. The court found that "[t]he conduct of the defendant [] constituted a denial of both the plaintiff's right to the master recording and a total usurping of plaintiff's right to possess the master recording." Id. at 488. The court noted that "it is true that an action for conversion will not normally lie[] when it involves intangible property [such as musical performances]," but it held that the case was distinguishable because the action centered on the right to possess a tangible piece of property – the master recording. See id. at 489. The court thus held that the plaintiff's claims had accrued at the date of the initial denial of his right to the master recording and as a result were time-barred. See id. at 488-89; see also SongByrd, Inc. v. Estate of Grossman, 206 F.3d 172, 182 (2d Cir. 2000) (holding that the plaintiff's claims were untimely under Sporn where the plaintiff similarly alleged wrongful use of master recordings).

Here, unlike in Sporn, there is no allegation that defendants wrongfully possessed and denied Urbont his right to a tangible piece of property. As Urbont accurately observes, "[t]here was no change in Urbont's relationship to the [sound recording] with Sony's initial infringement." (Pl.'s Mem. at 23.) In fact, Urbont remained unaware of Sony's alleged infringement for roughly ten years following the release of Supreme Clientele, and he even licensed the "Iron Man Theme" to Paramount Pictures in 2008 for the film Iron Man. It is clear that Sony's alleged actions did not result in a total deprivation of Urbont's property rights.

We therefore hold that Urbont's state law claims allege mere interference with his property and each alleged wrongful act gave rise to a separate common law cause of action. See Stein v. RKO Radio Pictures, Inc., 53 U.S.P.Q. 294 (S.D.N.Y. 1942) (holding that each showing of a motion picture that allegedly infringed on the plaintiff's common law copyright gave rise to a separate cause of action); see also Greenlight Capital, Inc. v. Greenlight (Switzerland) S.A., No. 04 Civ. 3136 (HB), 2005 WL 13682, at *7-8 & n.9 (S.D.N.Y. Jan. 3, 2005) (holding that the plaintiff's unfair competition claim, which was predicated on alleged trademark infringement, was timely because it involved ongoing activity rather than a singular act of misappropriation).

Our holding finds support from the fact that federal copyright infringement claims are treated in a like manner - as previously described, each act of infringement triggers a separate federal claim for relief. See Kwan, 634 F.3d at 228. It would seem only logical for federal and state claims based on copyright infringement to accrue in a parallel manner. Thus, Urbont's federal and state claims are both limited to alleged wrongful acts occurring subsequent to May 21, 2007.

## CONCLUSION

For the reasons stated above, Sony's motion to dismiss is granted with regard to Urbont's Copyright Act claims and denied with regard to Urbont's state law claims.


SO ORDERED.

Dated:    New York, New York
          March 27, 2012

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

21

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorney for Plaintiffs:**
Richard S. Busch, Esq.
King & Ballow
315 Union Street, Suite 1100
Nashville, TN 37201

**Attorney for Defendant:**
Marc S. Reiner, Esq.
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020