UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Jack URBONT d/b/a URBONT MUSIC | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | No. 11-Civ-04516(NRB) |
| SONY MUSIC ENTERTAINMENT, individually d/b/a EPIC RECORDS ("Sony"), DENNIS COLES p/k/a GHOSTFACE KILLAH and RAZOR SHARP RECORDS, LLC | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND IN OPPOSITION TO
DEFENDANTS' MOTION
<u>FOR SUMMARY JUDGMENT</u>**

i

## <u>TABLE OF CONTENTS</u>

Introduction ...........................................................................................................................1

### <u>Argument</u>

   I.   The Law is Clear Sony Does Not Have Standing to Challenge Urbont's Ownership ........2

      A.  Urbont is the owner of the composition, "Iron Man Theme" ......................................5

      B.  Urbont owns the sound recording of the "Iron Man Theme" ......................................7

      1.  Urbont owns the sound recording separate and apart from its use in an audiovisual work .................................................................................................................8

      2.  The creators of the television series understood Urbont owned the sound recording ..8

   II.  The Works at Issue are Not Works for Hire ......................................................................9

   III. Sony is a Willful Infringer ............................................................................................11

Conclusion ...........................................................................................................................12

## TABLE OF AUTHORITIES

*Barefoot Architect, Inc. v. Bunge,*

 *632 F.3d 822 (3d Cir. 2011)* ..................................................................4


*Boisson v. Banian, Ltd.,*

 *273 F.3d 262 (2d Cir. 2001)* ..................................................................5


*Cusano v. Horipro Ent. Group,*

 *301 F. Supp. 2d 272 (S.D.N.Y. 2004)* ..................................................6


*Donaldson Publishing Co. v. Bregman, Vocco & Conn, Inc.,*

 *375 F.2d 639 (2d Cir 1967)* ..................................................................10


*Durham Indus., Inc. v. Tomy Corp.,*

 *630 F.2d 905 (2d Cir. 1980)* ..................................................................5


*Eden Toys, Inc. v. Florelee Undergarmet Co., Inc.,*

 *697 F.2d 27 (2d Cir. 1982)* ..................................................................2, 3


*Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.,*

 *342 F.3d 149 (2d Cir. 2003)* ..........................................9, 9 n.5, 9 n.6


*James v. Delilah Films, Inc.,*

 *544 N.Y.S. 2d 447 (N.Y. Sup. Ct. 1989)* ..........................................8


*KB Home v. Antares Homes, Ltd.,*

 *No. 3-04-CV-1031, 2007 WL 1893370 (N.D. Tex. June 28, 2007)* ................................ 2-4

*Marvel Characters, Inc. v. Kirby,*

    ***726 F.3d 119 (2d Cir. 2013)*** ........................................................................9, 11


*Maxwood Music Ltd. v. Malkian,*

    ***713 F. Supp. 2d 327 (S.D.N.Y. 2010)*** ...................................................................6


*Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,*

    ***558 F.2d 1090 (2d Cir. 1977)*** .................................................................................5


*Overseas Direct Import Co., Ltd. v. Family Dollar Stores, Inc.,*

    ***929 F. Supp. 2d 296 (S.D.N.Y. 2013)*** ..................................................................4


*Picture Music, Inc. v. Bourne, Inc.,*

    ***457 F.2d 1213 (2d Cir. 1972)*** .........................................................................9, 10


*Playboy Enters., Inc. v. Dumas,*

    ***53 F.3d 549 (2d Cir. 1995)*** ...................................................................................9


*United Artists Theatre Circuit, Inc. v. Sun Plaza Ent. Corp.,*

    ***352 F. Supp. 2d 342 (E.D.N.Y. 2005)*** ..................................................................5


*W. Elec. Co. v. Pacent Reproducer Corp.,*

    ***42 F.2d 116 (2d Cir. 1930)*** ...................................................................................6

## STATUTES AND RULES

17 U.S.C. § 410.......................................................................................................................5

iv

Plaintiff Jack Urbont respectfully submits this memorandum of law in support of his Motion for Summary Judgment and in opposition to Defendants Sony Music Entertainment d/b/a/ Epic Records and Razor Sharp Records, LLC's (collectively "Sony") Motion for Summary Judgment, and states as follows:

## Introduction

Sony's Memorandum of Law concedes that Sony has committed copyright infringement, but seeks to avoid liability by claiming parties other than Urbont should have sued Sony. Sony does not deny that the album *Supreme Clientele* contains the composition and sound recording for the "Iron Man Theme" (the composition and sound recording are collectively referred to as the "Works").[1] *See* DE 61-9, Deposition of Wade Leak at 77:4-16.

Instead, Sony argues in error that Urbont does not have any ownership interest in those Works and that the Works at issue were works made for hire. Sony's claims are unsupported by any evidence that a third party is actually claiming any rights to the Works. Instead, Sony attempts to manufacture some controversy as to ownership in order to allow itself to continue to infringe the Works without consequence.

The only competent evidence which goes directly to ownership in this action shows that Urbont is the rightful owner of the Works and Sony has no standing to challenge ownership, which is uncontested by any of the parties Sony puts forth as potential authors. Thus, Urbont's ownership of the Works is not legitimately disputed

Accordingly, due to Sony's clear admission that it has infringed the copyrights in the Works and the undisputed fact that Urbont owns the copyrights in the Works, Sony is liable to Urbont for infringement of his copyrights as a matter of law.

---

[1] Sony does claim that instead of containing a sound recording, *Supreme Clientele* is actually infringing an audiovisual work.

## ARGUMENT

### I.     The Law is Clear Sony Does Not Have Standing to Challenge Urbont's Ownership

As discussed in detail below, none of the potential contenders for ownership that Sony puts forward regarding ownership of the Works actually disputes Urbont's ownership of the Works.  In fact, the statements and actions of all these parties show Urbont is the owner of the Works.  Where there is no dispute among the alleged owners of a copyrighted work, a third-party infringer is not allowed to create a false controversy regarding ownership in order to avoid liability.

A third-party infringer does not have standing to challenge the ownership of a copyright as between two other parties.  Sony does not assert it owns the copyrights to the composition or sound recording at issue.  Instead, Sony seeks to avoid liability by alleging that, while it admittedly infringed the Works, a different party should have been the one to bring suit against it.  Infringers simply are not allowed to raise such issues in order to avoid liability when they have clearly infringed a copyrighted work.

The Second Circuit, in *Eden Toys, Inc. v. Florelee Undergarmet Co., Inc.*, held that where there is no dispute between two potential copyright holders a third party cannot create a dispute to defeat of claim of copyright infringement.  697 F.2d 27, 36 (2d Cir. 1982).  Courts in other Circuits have also followed this principle.  In *KB Home v. Antares Homes, Ltd.*, No. 3-04-CV-1031, 2007 WL 1893370 (N.D. Tex. June 28, 2007), the Court stated:

> Section 204(a) provides: "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 USC § 204(a). Plaintiff argues that because Defendants are alleged infringers who are not parties to the copyright transfers, they cannot challenge these transfers. Section 204(a) has three purposes: (1) to ensure that a copyright is not "inadvertently transferred;" (2) to ensure precisely "what rights" at "what price" are being transferred; and (3) to

2

resolve later disputes. *Lyrick Studios, Inc. v. Big Idea Prods., Inc.,* 420 F.3d 388, 392 (5th Cir. 2005), *cert. denied,* 547 U.S. 1054, 126 S. Ct. 1653, 164 L. Ed. 2d 396 (2006).

*Id.* at 12-13.  The Court went on to hold that:

> Under section 204(a), "[a]n after-the-fact writing can validate an agreement from the date of its inception, at least against challenges to the agreement by third parties."   In *Lyrick,* the court noted that "when courts have found the post-deal writing sufficient, the party challenging the writing has been an alleged infringer who is an outsider to the deal. In that situation, **courts are hesitant to allow an outside infringer to challenge the timing or technicalities of the copyright transfer.**"

*Id.* at *13 (internal citations omitted) (emphasis added).   The Court went on to hold that this principle was not limited to circumstances in which an oral transfer was later ratified by a writing:

> The language in *Billy-Bob* is broader than that of other courts and does not appear to limit its holding to a post-deal writing ratifying an oral agreement. In that case, the court held that an alleged infringer who is not party to the transfer "does not have standing under § 204. . . . **[W]here there is no dispute between the copyright owner and the transferee about that status of copyright, 'it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement.'**" 329 F.3d at 592-593 (quoting *Imperial Residential Design,* 70 F.3d at 99). Similarly, in *Eden Toys,* the court noted that where "the copyright holder appears to have no dispute with its licensee on this matter, it would be anomalous to permit a third party infringer to invoke [section 204(a)] against the licensee." 697 F.2d at 36

*Id.* at *14 (emphasis added).   The reasoning for this holding is that Section 204 has a specific purpose and that purpose is not to protect third-party infringers.  The Court explained this point:

> The rationale of section 204(a) is clearly to protect the parties to the transfer of a copyright. *Lyrick,* 420 F.3d at 392. Accordingly, the court finds persuasive the reasoning of those courts that have limited a third-party infringer's right to dispute ownership. As a district court in Oregon stated, **"[A] stranger lacks standing to assert A's alleged rights against B when A declines to assert them himself. The defendant had no right to infringe the copyright, regardless of whether it was owned by A or B."** *Fleming v. Miles,* 181 F. Supp. 2d 1143, 1158 (D. Or. 2001) (citing *Magnuson v. Video Yesteryear,* 85 F.3d 1424 (9th Cir. 1996)). Plaintiffs cite *Fleming* and argue that Defendants' argument regarding ownership of the Copyrights is no more than a red herring because the issue of whether a

transfer was effected does not ultimately excuse Defendants' alleged
infringement.

*Id.* at \*14 (emphasis added).

In *KB Homes*, the plaintiff was not able to provide all the documents establishing transfer, but because there was evidence of a transfer and no dispute between the transferor and transferee, and because the defendants were not able to produce any evidence disputing that a transfer had occurred, the Court found that as a matter of law, the plaintiff owned the copyright in question. *Id*. at 19-20.

This rationale was also adopted by *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822 (3d Cir. 2011). The *Barefoot* Court held:

> At least where there is no dispute between transferor and transferee regarding the
> ownership of a copyright, there is little reason to demand that a validating written
> instrument be drafted and signed contemporaneously with the transferring event.
> No one in the cases just cited (or in the case now before this Court) has "giv[en]
> away his copyright inadvertently," or lost his chance to negotiate, or been left
> without a "guidepost" for resolving a dispute. Nor are concerns regarding
> certainty compelling: none of the defendants in any of these cases thought that it
> owned a copyright, only to find out through litigation that its claim was invalid
> because of a snafu involving the written instrument. All of them knew or should
> have known that they were at least potentially infringing *someone's* copyright —
> even if they perhaps could not be precisely sure whose. . . . [W]e hold that **a
> third-party infringer in such a case cannot evade liability by invoking §
> 204(a) and demanding a contemporaneously-drafted instrument.**

*Barefoot Architect, Inc,* 632 F.3d at 830 (emphasis added).

The *Barefoot* case has been cited by Courts in this District with approval. *See Overseas Direct Import Co., Ltd. v. Family Dollar Stores, Inc.*, 929 F. Supp. 2d 296, 311 (S.D.N.Y. 2013). Such a rule is the only possible way to fairly protect copyrighted works. Here, as stated above, each of the parties that Sony alleges are the owners of the Works denies that they are owners and admits that Urbont is the true owner of the copyrights in the Works. Accordingly, under the rule

in *KB Homes* and *Barefoot*, Sony, an admitted infringer, has no standing to challenge that ownership as a matter of law.

### A.      Urbont is the owner of the composition, "Iron Man Theme"

A copyright certificate, if timely obtained, "constitute(s) prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c) (Copyright Act of 1976); *see also Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 n.1 (2d Cir. 1977) (certificate given same effect under 1909 Copyright Act).  The presumption of validity which comes with a copyright registration extends to the facts asserted in the certificate such as ownership and originality.  *See United Artists Theatre Circuit, Inc. v. Sun Plaza Ent. Corp.*, 352 F. Supp. 2d 342, 352-53 (E.D.N.Y. 2005) (citing *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001).

In this instance, there is undisputed proof that Urbont has a copyright registration which lists "Jack Urbont" as the owner of the copyright renewal to the "Iron Man Theme" composition. DE 61-2.  Sony correctly asserts that the deposit copy sheet music associated with this registration contains a handwritten note which states "Reversion of Rights to Urbont Music BMI."[2]  However, a handwritten note, by Urbont, does not change the presumption (and in this case the fact) that the registration Urbont obtained from the Copyright Office is correct in listing Urbont as the owner of the composition.  This is especially true where Mr. Urbont owns Urbont Music, the company Sony alleges is the owner of the copyright.  Exhibit A to Declaration of Andrew W. Coffman, Depo. of Jack Urbont at 164:16-165:8.

---

[2] As discussed below, Sony's claim is disingenuous as Urbont made clear at his deposition that he was, in fact, the owner of the composition and that Urbont Music only had control of and administered the publisher's share of the composition.  There can be no doubt that had Urbont Music, a division of Jack Urbont Associates, brought this suit, Sony would claim that the registration lists only Urbont as the owner of the composition and claimed that Jack Urbont Associates did not have standing to pursue this claim.

Traditionally, compositions have been divided into two sections, a publisher's share and a writer's share. *See e.g. Maxwood Music Ltd. v. Malkian*, 713 F. Supp. 2d 327 (S.D.N.Y. 2010); *Cusano v. Horipro Ent. Group*, 301 F. Supp. 2d 272, 277 (S.D.N.Y. 2004). Consistent with that industry customer Urbont has allowed his company, Jack Urbont Associates and its divisions, including Urbont Music, to maintain control over and administer the publisher's share. Ex. A at 164:10-165:8.[3] However, nothing about that division changes the ownership, which is vested in Urbont pursuant to his copyright registration.[4]

Such a finding that Urbont is the owner of the composition is further supported by an agreement between Urbont and New World Entertainment, Ltd. ("New World"), the owners of the Iron Man intellectual property associated with certain comic books and audiovisual works including the 1960's super hero television shows. In that agreement, New World licensed from Urbont the rights to use the composition "Iron Man Theme" with the television show for which that composition serves as a theme song. DE 61-6 at ¶ 5. If, as Sony claims, the composition was a work for hire owned by the creator of such television programs there would be no need for this license. The Second Circuit has held, "a license means only leave to do a thing which the licensor would otherwise have a right to prevent." *W. Elec. Co. v. Pacent Reproducer Corp.*, 42 F.2d 116, 117 (2d Cir. 1930) (holding a non-exclusive license leaves all the rights with the licensor, but grants permission to a licensee). Here, a license was needed because Urbont owns the composition and had the right to prevent New World from using it. New World did not obtain that license from Urbont Music, but instead obtained it from the composition copyright

---

[3] Urbont has offered a declaration in this action that he would, if called upon to do so, testify consistently with his deposition. DE 61-1 at ¶ 7.

[4] Urbont's testimony indicates that he owns half the composition and the other half of the composition is owned by a corporation which he owns. However, there is no legal effect to such a belief as only Urbont himself has actually made a claim to the copyright and he claimed the entire copyright himself. Further, even if Urbont did own only half the composition, such ownership is sufficient for him to assert his claims of copyright infringement against Sony.

owner, Urbont.  Marvel Entertainment again licensed the composition when it made its live action "Iron Man" movie.  DE 62-3.  Again, if a Marvel entity owned the composition there would be no need to license it.

Finally, Sony admits that Urbont has actually licensed the "Iron Man Theme" composition to third parties.  *See* Defendant's Rule 56.1 statement at ¶ 56; DE 61-6.  Based on the foregoing undisputed facts, Urbont is the owner of the composition copyright as a matter of law and is entitled to summary judgment for Sony's admitted infringement of the "Iron Man Theme" composition.

### B.      Urbont owns the sound recording of the "Iron Man Theme"

First, Urbont has put on undisputed evidence that he is the creator of the sound recording and was personally paid for the actual creation of the sound recording.  DE 61-1 at ¶ 10-11.  Urbont also testified that he recorded the sound recording without interaction from anyone associated with the television show.  Ex. A at 30:5-31:1.  Urbont also testified that there was an agreement between the parties that he would retain ownership of the sound recording.  Ex. A at 26-27:1.  No other party to the agreement has offered any testimony in this case.  That alone is enough to show that Urbont is the owner of the sound recording.

Such a finding that Urbont is the owner of the sound recording is further supported by the agreement between Urbont and New World discussed above.  In that agreement, New World licensed from Urbont the rights to use the sound recording "Iron Man Theme" with the television show for which that sound recording serves as a theme song.  DE 61-6 at ¶ 5. If, as Sony claims, the sound recording was simply part of the television show owned by the creator of such television programs, and not a separate work, there would be no need for license.  Of course, in this case, a license was needed because Urbont owns the sound recording, New World.

### 1.  Urbont owns the sound recording separate and apart from its use in an audiovisual work

Sony first claims that Urbont is not the owner of the sound recording, because it claims that the recording of the "Iron Man Theme" at issue is nothing more than a portion of an audiovisual work, and not a standalone sound recording.  In making its argument, Sony relies heavily on *James v. Delilah Films, Inc.*, 544 N.Y.S. 2d 447, 449-50 (N.Y. Sup. Ct. 1989).  In that case, the Court found a particular sound featured in an audiovisual work was not sound recording because it could not be separated from the visual portion of the work in question.  *Id*. at 449.  That is not true in this case.  Here there is a separate sound recording which was made wholly and separately from the creation of the audiovisual works in question.  DE 61-1 at ¶ 10-11.  In fact, a separate sound recording exists in the form a master tape.  Ex. A at 89:3-90:8.  Sony was offered the opportunity to inspect that master tape, but chose not to do so.  Urbont has offered testimony that the sound recording was copied on *Supreme Clientele* and Sony has offered no evidence to the contrary.  Ex. A at 116:1-117:4.  That additional copying of portions of an audiovisual work are also included on *Supreme Clientele* does not change the fact the sound recording exists separate and apart from the audiovisual work and was copied.

### 2.  The creators of the television series understood Urbont owned the sound recording

Urbont testified that he had a contemporaneous understanding with the producers of the television series that he owned the Works.  Ex. A at 45:16-48:22.  There is no evidence to contradict this testimony.  Further, as discussed above, there is substantial evidence to corroborate his testimony.   As such, Sony cannot manufacture a controversy regarding ownership of the sound recording without evidence in order to avoid its clear liability.

Based on the foregoing undisputed facts, Urbont is the owner of the sound recording copyright as a matter of law and is entitled to summary judgment for Sony's admitted infringement of the "Iron Man Theme" sound recording.

## II.   The Works at Issue are Not Works for Hire

For both the composition and sound recording, Sony also attempts to challenge Urbont's standing to bring suit because it alleges that the Works are both works for hire. Under the 1909 Copyright Act, a work is a work for hire if it was made at an employer's instance and expense. *See, e.g., Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 137 (2d Cir. 2013); *Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 553-54 (2d Cir. 1995).

Most importantly, there is no dispute between Urbont and New World that the Works are not works made for hire.[5]  New World and Urbont reached a settlement agreement on June 30, 1995.  DE 61-6.  In that agreement's recitals, New World agrees that Urbont is the owner of the renewal copyright[6] and the sound recordings of certain songs, including the "Iron Man Theme." *Id*. at 1.  That agreement goes on to have New World license both the composition and sound recording from Urbont.  *Id*. at ¶ 5.  It is outrageous for Sony to claim that the Works are works for hire, when the supposed employer does not itself claim that the Works are works for hire.

In the cases cited by Sony, it is the employer who is claiming the works at issue are works made for hire.  *See e.g. Kirby*, 726 F.3d at 127 (Marvel contends it owns certain comic book drawings because the illustrator was hired by its predecessor in interest to create the works);[7] *Estate of Burne Hogarth*, 342 F.3d at 155-156 (Author's corporation claiming

---

[5] Sony attempts to rely on a presumption of work for hire status, but of course that presumption only works "in favor of a commissioning party" and not a third party infringer.  *See Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 157-58 (2d Cir. 2003).

[6] If the composition were a work made for hire the right to the renewal copyright in the composition would have rested with the employer and not with Urbont.  *See Estate of Burne Hogarth*, 342 F.3d at 157-58.

[7] The *Kirby* case shows Marvel knows how to assert its rights.  Of course, in this instance it is not asserting any rights because it has none.  Instead Marvel associated companies have repeatedly licensed the rights to the Works.

agreement with illustrator made illustrator's contributions works for hire); *Picture Music, Inc. v. Bourne, Inc.*, 457 F.2d 1213 (2d Cir. 1972) (Defendant claimed that it owned 100% of composition because Plaintiff's contribution was part of a work for hire).  In none of the cases cited by Sony is a third party infringer seeking a finding that a particular work is a work made for hire when there is no dispute between the supposed contractor and author.  In essence, Sony argues that Urbont and New World, the only two parties who have any actual knowledge of and stake in which of them is the true owner of the Works, are mistaken about their understanding of who owns the Works, and that Sony should be absolved of liability for its admitted infringement because of this alleged mistaken belief. In addition to being an absurd position, allowing such a defense does nothing but undermine copyright protection. Consistent with the case law regarding an infringer's inability to challenge ownership, Sony's defense must be disallowed by this Court.

The cases cited by Sony are also distinguishable on their facts.  For instance, among the facts in *Picture Music, Inc.*, which supported a finding of a work made for hire is that the employer was able to direct and supervise the manner in which the work was done. 457 F.2d at 1217.  In that case, this ability to direct and supervise went so far as to allow for the employer to make revisions to the work.  *Id.*  In the instant case, Urbont presented New World with a composition and sound recording and essentially offered them the ability to take it or leave it. Ex. A at 30:5-31:1.  Urbont wrote the composition, chose the location of recording, hired the musicians, and conducted the recording sessions.  *See* Ex. A at 158:21-160:19. Additionally, other factors discussed in the *Picture Music, Inc.* case also lead to a finding that Urbont was not an employer.  For instance, Urbont was not paid a fixed salary nor was he barred from doing other work.  457 F.2d at 1217; *see also Donaldson Publishing Co. v. Bregman, Vocco & Conn, Inc.,* 375 F.2d 639, 643 (2d Cir 1967) (finding relevant employees' "freedom to engage in

profitable outside activities without sharing the proceeds with [the hiring party]).  Urbont hired the orchestra on the recordings himself and used that same orchestra to record others of his compositions which were wholly unrelated to the Works or any other superhero themes.  Ex. A at 163:12-164:9.

In *Kirby*, plaintiff could offer no testimony regarding the understanding of the parties because the plaintiff was deceased.  *Kirby*, 726 F.3d at 141 n.10.  In this case, Urbont is able to testify and has testified to a contemporaneous understanding with the producers of the television series that he owned the Works.  Ex. A at 45:16-48:22.  Sony has no testimony that would contradict Urbont's assertions.

There are substantial facts which show the Works were not works made for hire.  In fact, the television show did not exist when Urbont wrote and recorded the "Iron Man Theme."  Ex. A at 157:25-158:9.  Further, Urbont testified that he had a contemporaneous understanding with the producers of the television series that the Works were not works for hire.  Ex. A at 45:16-48:22. When viewed in conjunction with the fact that the supposed employer does not contend the Works are works made for hire, the only legally possible conclusion to derive from these the undisputed facts is that the Works are not works made for hire as a matter of law.

### III.    Sony is a Willful Infringer

Finally, Sony claims that as a matter of law, it is not a willful infringer.  First, Sony claims that it was not a willful infringer when it initially released *Supreme Clientele* because it was unaware of the inclusion of the "Iron Man Theme" on the album and had indemnity rights. Urbont does not need to claim that Sony was a willful infringer when it released the album.

There can be no doubt that Sony became a willful infringer at some point.  Sony's Memorandum makes clear that Sony has released and distributed an album which contains

material it does not own.  *See also* DE 61-9 at 77:4-16; 79:16-23.  While Sony disputes that Urbont is the right plaintiff, Sony does not contend it owns or has a license to use either of the Works.  As such, there is no rational conclusion except that Sony is an infringer.  Not only is Sony an admitted infringer, but despite this admission, it continues to distribute *Supreme Clientele* even after it learned with certainty that it does not have the right to distribute the Works contained on the album.  *See* DE 61-9 at 103:13-15 (Sony continues to sell *Supreme Clientele*). Therefore, the undisputed facts show that Sony is a willful infringer as a matter of law, and Urbont is entitled to summary judgment on this issue.

## Conclusion

Sony's Memorandum attempts to create a controversy where none exists.  Jack Urbont is the owner of the composition and sound recording of the "Iron Man Theme."  Urbont created these works without remuneration from the creators of the television show and then licensed the works to them.  All parties to the original transaction agree that Urbont owns the sound recording and the composition.  Based on Urbont's testimony it is clear the parties to that original arrangement agreed in the 1960s.  Additionally, there is a 1995 settlement agreement which again evidences that Urbont owns the composition and sound recording which have been licensed for inclusion in the television show.

Sony cannot deny it is an infringer in this action.  Sony does not now deny that it is an infringer and it has not stopped distributing *Supreme Clientele*.  Therefore, it has no other remedy except to create this false controversy in order attempt to avoid liability.  Such hollow arguments must be given no weight.  Urbont prays this Court will grant him partial summary judgment and deny Sony's Motion.

Dated: March 13, 2015                         KING & BALLOW

By:    /s/Andrew W. Coffman
        Richard S. Busch (SB 5613)
        Andrew W. Coffman
        KING & BALLOW
        315 Union Street, Suite 1100
        Nashville, Tennessee 37201
        Telephone:  (615) 259-3456
        Facsimile:   (615) 726-541

        Kenneth E. Gordon (KG 5703)
        GORDON, GORDON & SCHNAPP, P.C.
        437 Madison Avenue, 39th Floor
        New York, New York 10022
        Telephone:  (212) 355-3200
        Facsimile:   (212) 355-3292

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of March, 2015, I electronically filed the foregoing Document with the Clerk of the Court using the ECF System which sent notification of such filing to the following:

Marc Reiner, Esq.
Hand Baldachin & Amburgey LLP
8 West 40th Street
12th Floor
New York, NY 10018

/s/ Andrew W. Coffman

14