Marc S. Reiner (MR-6669)
HAND BALDACHIN & AMBURGEY LLP
8 West 40th Street, 12th Floor
New York, New York 10018
Telephone: (212) 956-9500
Facsimile: (212) 376-6080

Attorneys for Defendants
Sony Music Entertainment and
Razor Sharp Records, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACK URBONT,<br><br>                            Plaintiff,<br><br>      - against -<br><br>SONY MUSIC ENTERTAINMENT, individually d/b/a EPIC RECORDS; DENNIS COLES p/k/a GHOSTFACE KILLAH; and RAZOR SHARP RECORDS, LLC,<br><br>                            Defendants. | No. 11 Civ. 04516 (NRB) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS SONY MUSIC
ENTERTAINMENT AND RAZOR SHARP RECORDS, LLC**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.    SONY IS PERMITTED TO CHALLENGE WHETHER PLAINTIFF
CAN ESTABLISH OWNERSHIP OF THE IRON MAN WORKS ................................. 2

II.   THE UNDISPUTED EVIDENCE DEMONSTRATES THAT THE
IRON MAN RECORDING IS NEITHER PART OF THE RECORD
NOR A "SOUND RECORDING" UNDER THE 1976 ACT AND
THEREFORE THE CLAIM FOR INFRINGEMENT OF THAT
WORK IS PREEMPTED .................................................................................................. 5

III.  THE UNDISPUTED EVIDENCE DEMONSTRATES THAT
THE IRON MAN WORKS WERE WORKS MADE FOR HIRE
UNDER THE 1909 ACT .................................................................................................... 6

    A.    Sony Has Standing To Challenge Plaintiff's Ownership
Based On The Iron Man Works' Creation As Works-For-Hire .................................. 7

    B.    Under Established Law, Marvel Had The Right To
"Direct And Supervise" The Creation Of The Iron Man Works ................................ 8

    C.    Plaintiff Cannot Present Uncontroverted Evidence Of A Contemporaneous
Agreement That He Would Own The Iron Man Works ............................................. 9

IV.  MARVEL HAS NOT ADMITTED OR AGREED THAT PLAINTIFF
IS THE OWNER OF THE IRON MAN WORKS ........................................................... 11

V.   AS A MATTER OF LAW, SONY HAS NOT ENGAGED IN
WILLFUL INFRINGEMENT .......................................................................................... 12

CONCLUSION ........................................................................................................................ 13

## TABLE OF AUTHORITIES

**CASES**

*Aldon Accessories Ltd. v. Spiegel, Inc.*,
   738 F.2d 548 (2d Cir. 1984) .................................................................................................. 7

*Archie Comic Publ'ns, Inc.*,
   258 F. Supp. 2d 315, 332 (S.D.N.Y. 2003),
   *aff'd*, 88 Fed. App'x 468 (2d Cir. 2004) ............................................................................... 11

*Barefoot Architect, Inc. v. Bunge*,
   632 F.3d 822 (3d Cir. 2011) ............................................................................................. 3, 4

*Caffey v. Cook*,
   409 F. Supp. 2d 484 (S.D.N.Y. 2006) ................................................................................. 13

*Easter Seal Soc. For Crippled Children and Adults of Louisiana, Inc. v. Playboy Enters.*,
   815 F.2d 323 (5th Cir. 1987) ................................................................................................ 7

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*,
   697 F.2d 27 (2d Cir. 1982) ............................................................................................... 3, 4

*Estate of Hogarth v. Edgar Rice Burroughs, Inc.*,
   342 F.3d 149 (2d Cir. 2003) .................................................................................................. 8

*FM Indus., Inc. v. Citicorp Credit Servs., Inc.*,
   No. 07 C 1794, 2008 WL 162756 (N.D. Ill. Jan. 14, 2008) ................................................. 12

*In re Napster, Inc. Copyright Litig.*,
   191 F. Supp. 2d 1087 (N.D. Cal. 2002) ................................................................................ 7

*James v. Delilah Films, Inc.*,
   544 N.Y.S.2d 447 (Sup. Ct. N.Y. Cty. 1989) ........................................................................ 6

*Jones v. Virgin Records, Ltd.*,
   643 F. Supp. 1153 (S.D.N.Y. 1986) .................................................................................... 10

*KB Home v. Antares Homes, Ltd.*,
   No. 3-04-1031, 2007 WL 1893370 (N.D. Tex. June 28, 2007) ............................................. 3

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*,
   903 F.2d 1486 (11th Cir. 1990) ............................................................................................. 7

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013) .................................................................................................. 8

*McIntyre v. Double A-Music Corp.*,
   166 F. Supp. 681 (S.D. Cal. 1958) .................................................................................... 10

*Melchizedek v. Holt*,
   792 F. Supp. 2d 1042 (D. Ariz. 2011) .............................................................................. 11

*Mills Music v. Cromwell Music*,
   126 F. Supp. 54 (S.D.N.Y. 1954) ..................................................................................... 10

*New Line Cinema Corp. v. Russ Berrie & Co.*,
   161 F. Supp. 2d 293 (S.D.N.Y. 2001) .............................................................................. 13

*Overseas Direct Import Co., Ltd. v. Family Dollar Stores, Inc.*,
   929 F. Supp. 2d 296 (S.D.N.Y. 2013) ................................................................................ 4

*Pannonia Farms, Inc. v. USA Cable*,
   03 Civ. 7841 (NRB), 2004 WL 1276842 (S.D.N.Y. June 8, 2004),
   *aff'd in relevant part*, 426 F.3d 650 (2d Cir. 2005) .......................................................... 4

*Picture Music, Inc. v. Bourne, Inc.*,
   457 F.2d 1213 (2d Cir. 1972) ............................................................................................. 8

*Playboy Enters., Inc. v. Dumas*,
   53 F.3d 549 (2d Cir. 1995) ............................................................................................... 11

*Psihoyos v. Pearson Educ. Inc.*,
   855 F. Supp. 2d 103 (S.D.N.Y. 2012) ................................................................................ 7

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
   813 F. Supp. 2d 489 (S.D.N.Y. 2011) .............................................................................. 11

*Rosette v. Rainbo Record Mfg. Corp.*,
   354 F. Supp. 1183 (S.D.N.Y. 1973),
   *aff'd*, 546 F.2d 461 (1976) ............................................................................................... 10

*Shapiro, Bernstein & Co. v. Miracle Record Co.*,
   91 F. Supp. 473 (N.D. Ill. 1950) ...................................................................................... 10

*Twin Books Corp. v. Walt Disney Co.*,
   877 F. Supp. 496 (N.D. Cal. 1995),
   *rev'd on other grounds*, 83 F.3d 1162 (9th Cir. 1996) ................................................... 12

## **STATUTES**

17 U.S.C. § 204(a) ............................................................................................................ 2, 3, 4

## **LEGISLATIVE HISTORY**

H.R. Rep. No. 92-487 ............................................................................................................ 5, 6

Defendants Sony Music Entertainment ("Sony Music") and Razor Sharp Records, LLC (collectively, "Sony") respectfully submit this Reply Memorandum of Law in further support of their Motion for Summary Judgment.

## PRELIMINARY STATEMENT

In its opening memorandum of law ("Def. Br."), Sony demonstrated how the undisputed facts in this case establish that plaintiff Jack Urbont ("Plaintiff") cannot bring a claim for infringement of either the musical composition for the song *Iron Man Intro* ("Iron Man Composition") or the sound recording embodying that song ("Iron Man Recording") (collectively, "the Iron Man Works"). The first element of each of Plaintiff's claims is to establish his ownership rights over the works he is alleging are unlawfully copied. Plaintiff has failed to meet his burden on this crucial element of his claims. Additionally, with respect to the sound recording claims, Plaintiff has failed to prove the existence of a sound recording that is separate and apart from the audiovisual works, or to identify what was allegedly copied.

In response to Sony's arguments, Plaintiff does not dispute any of the material facts cited by Sony – including the fact that the Iron Man Recording is not part of the evidentiary record. Instead, Plaintiff makes unfounded claims that Sony is precluded from challenging Plaintiff's ownership of the Iron Man Works based on a misreading of the applicable law and by ignoring contrary authority. Plaintiff also misreads and ignores legal precedent in responding to Sony's assertion that the Iron Man Recording claims are preempted and that the Iron Man Works were created for hire under the Copyright Act of 1909 (the "1909 Act"). In addition to ignoring relevant law, Plaintiff also ignores highly relevant facts, including those that flatly contradict his uncorroborated assertion that he had an agreement in 1966 with Marvel Comics Group ("Marvel") that he would own the Iron Man Works. Remarkably, Plaintiff's reply brief makes

*no mention* of the assertions of copyright ownership that Marvel made concerning these works – including Marvel's own copyright registrations for the audiovisual works that contain the Iron Man Works. Those assertions of ownership by Marvel clearly demonstrate that Marvel believed that it owned those works.

For the reasons stated in Sony's opening papers and below, the undisputed material facts and the established law demonstrate, *inter alia*, that the Iron Man Works are not owned by Plaintiff and he therefore cannot assert any rights to them against Sony. As a result, Sony is entitled to judgment as a matter of law on all of Plaintiff's claims in this case.

## ARGUMENT

**I.  SONY IS PERMITTED TO CHALLENGE WHETHER PLAINTIFF CAN ESTABLISH OWNERSHIP OF THE IRON MAN WORKS**

Plaintiff asserts that a "third-party [alleged] infringer does not have standing to challenge the ownership of a copyright as between two other parties" (Pl. Reply Br. at 2), but he cites no case that supports this broad, and incorrect, statement.[1] The cases upon which Plaintiff exclusively relies instead stand solely for the proposition that third-party alleged infringers may not challenge the *sufficiency of a writing* that acts as a transfer of a copyright pursuant to 17 U.S.C. § 204(a). *See* Pl. Reply Br. at 2-5.

Section 204(a) of the Copyright Act of 1976 (the "1976 Act") provides that a transfer of copyright is not valid unless it is in writing and signed by the transferor of the rights. *See* 17 U.S.C. § 204(a). As the cases cited by Plaintiff make clear, the purpose of Section 204(a) was to protect the parties to a transfer by making clear (i) that a transfer took place, (ii) exactly what

---

[1] Plaintiff claims that Sony "admittedly infringed" the Iron Man Works, but does not cite to any alleged admission by Sony. *See* Pl. Reply Br. at 1-2. In fact, Sony has not, and does not, make any such admission. But even if for purposes of this motion the Court accepts as true that Sony infringed the Iron Man Works (which Sony denies), Plaintiff still cannot demonstrate ownership of those works, which is a threshold element of each of his claims. As a result, his claims fail as a matter of law. *See* Def. Br. at 22-23.

2

was transferred, and (iii) the terms of the transfer. *See, e.g.*, *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982); *KB Home v. Antares Homes, Ltd.*, No. 3-04-1031, 2007 WL 1893370, at *4 (N.D. Tex. June 28, 2007). Because third parties to a purported transfer were not intended to be protected by any of these benefits of Section 204(a), the cases cited by Plaintiff hold that it would be inappropriate for third-party alleged infringers to invoke the protections of Section 204(a). *See, e.g.*, *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 830 (3d Cir. 2011); *Eden Toys, Inc.*, 697 F.2d at 36.[2]

These cases precluding the use of Section 204(a) are inapposite to this case because Sony has made *no attempt* to use Section 204(a) to challenge the sufficiency of any written transfer by or to Plaintiff. In its opening papers, Sony established that the Iron Man Works were created as works for hire and that ownership of those works therefore vested with the party commissioning those works at the time of creation of these works. *See* Def. Br. at 12-20. If Plaintiff was to be the owner of the Iron Man Works, an assignment of rights to him would be required but Plaintiff has not claimed that any such assignment has taken place and, in fact, scoffed at the notion that there was any assignment of rights to him. *See* Def. Br. at 20. No written transfer of rights has been claimed by Plaintiff and therefore none has been challenged by Sony.

Rather than challenge any written transfer, Sony is challenging Plaintiff's assertion of ownership, which is a required element of each of the causes of action he brings. As this Court has observed, "Plaintiff has an affirmative obligation to establish its ownership over the copyrights at issue." *Pannonia Farms, Inc. v. USA Cable*, 03 Civ. 7841 (NRB), 2004 WL

---

[2]   Ironically, the case most heavily relied upon by Plaintiff – *KB Home v. Antares Homes, Ltd.* – expressly *refused* to preclude the third-party alleged infringer in that case from raising Section 204(a) as a defense. *KB Home*, 2007 WL 1893370, at *6 ("The court does not hold that Defendants are barred from raising section 204(a) as a defense under these particular facts; however, the court is mindful that other courts have refused to allow a third-party infringer to raise similar ownership issues where there is no dispute between the copyright owner and the transferee.").

1276842, at *6 n.14 (S.D.N.Y. June 8, 2004) (Buchwald, J.), *aff'd in relevant part*, 426 F.3d 650 (2d Cir. 2005).  Sony is certainly permitted to challenge that ownership provided it does not rely upon Section 204(a) to do so.  *Id.* ("Defendant is not contesting plaintiff's claim of ownership because of a failure to comply with § 204(a).").  Plaintiff cites no cases where a defendant who was alleged to be a third-party infringer was prohibited from challenging a plaintiff's alleged ownership on grounds other than by invoking Section 204(a).

To the contrary, the very cases cited by Plaintiff make clear that a third-party *may* challenge a plaintiff's purported ownership rights so long as Section 204(a) is not invoked.  In *Barefoot Architect*, for example, the court precluded the defendant from using Section 204(a) to challenge a written memorialization of a purported oral transfer of copyright.  632 F.3d at 830.  After making that holding, however, the court *allowed* the defendant to challenge whether the initial oral transfer validly transferred the copyright.  *Id.* at 831.  The court ultimately upheld the grant of summary judgment to the defendant, holding the plaintiff could not demonstrate ownership because no jury could hold that the initial oral transfer was valid.  *Id.* at 832-33.[3]  Similarly, in *Eden Toys, Inc.*, even though the court precluded the defendant from challenging the validity of any written memorialization of an earlier transfer pursuant to Section 204(a), the court remanded to the district court for a determination of whether there had been any valid earlier transfer either orally or through the parties' conduct.  697 F.2d at 36.  Challenging a plaintiff's ownership of a copyright is therefore clearly permitted, provided that the defendant does not rely upon Section 204(a) in doing so.

---

[3] Plaintiff notes that *Overseas Direct Import Co., Ltd. v. Family Dollar Stores, Inc.*, 929 F. Supp. 2d 296 (S.D.N.Y. 2013) cites the *Barefoot Architect, Inc.* opinion with approval.  *See* Pl. Reply Br. at 4.  Plaintiff fails to note, however, that the specific provision for which *Overseas Direct* cited *Barefoot Architect* was "that an alleged infringer could challenge the validity of the copyright at issue when 'none of the proffered evidence . . . would permit a jury to conclude that an oral transfer took place.'"  *Overseas Direct Import Co., Ltd.*, 929 F. Supp. 2d at 308 (quoting *Barefoot Architect, Inc.*, 632 F.3d at 833).

Plaintiff's assertion that a third-party does not have the authority to challenge whether a plaintiff has sufficient ownership rights is therefore not supported by any of the cases he has cited and is contrary to the established law.

## II. THE UNDISPUTED EVIDENCE DEMONSTRATES THAT THE IRON MAN RECORDING IS NEITHER PART OF THE RECORD NOR A "SOUND RECORDING" UNDER THE 1976 ACT AND THEREFORE THE CLAIM FOR INFRINGEMENT OF THAT WORK IS PREEMPTED

In its opening papers, Sony demonstrated that Plaintiff did not produce the Iron Man Recording, either on this motion or in the case itself, and therefore the Court cannot determine whether he has met his burden of proof on any claims concerning that recording. *See* Def. Br. at 9. Plaintiff does not, and cannot, dispute that he did not produce the Iron Man Recording in discovery or on this motion.[4] As a result, the Court cannot assess what, if anything, was copied or find any infringement. Plaintiff accordingly has failed to meet his burden of proof on Counts 2, 3, and 4 as a matter of law. *See* Def. Br. at 9.

Sony also demonstrated in its opening papers that the Iron Man Recording is not a "sound recording" that is protected from preemption under section 301(c) of the 1976 Act. *See* Def. Br. at 10-11. Rather, the Iron Man Recording is purely a portion of the sound of an audiovisual work and therefore it is not eligible for separate copyright protection under the 1976 Act. *Id.* There is no dispute that any reproduction of the Iron Man Recording on *Supreme Clientele* would have been from an audiovisual work rather than from any phonorecord. *See* Pl. Response to Def. Rule 56.1 Statement, ¶ 26. Under the statutes, legislative history, and case law cited by Sony, the Iron Man Recording is therefore not a separate copyrighted sound recording that would be eligible for protection under the 1976 Act. *See* Def. Br. at 10-12; H.R. Rep. No. 92-487, at

---

[4] Plaintiff falsely claims that "Sony was offered the opportunity to inspect that master tape, but chose not to do so." Pl. Reply Br. at 8. No such offer was ever made. To the contrary, Plaintiff had promised to produce the master tape in his response to Sony's document requests, but failed to do so.

1571 ("[I]f there is an unauthorized reproduction of the sound portion of a copyrighted television program fixed on video tape, a suit for copyright infringement could be sustained under [the existing law concerning audiovisual works] rather than under the provisions of this bill [establishing copyright protection for sound recordings].").

In response, Plaintiff only tries to distinguish *one* of the cases, and none of the other authorities, cited by Sony. Plaintiff argues that the court in *James v. Delilah Films, Inc.*, 544 N.Y.S.2d 447 (Sup. Ct. N.Y. Cty. 1989) held that the songs from the movie in that case were not "sound recordings" because they "could not be separated from the visual portion of the work in question" and that the Iron Man Recording is a "sound recording" because it was "made wholly and separately from the creation of the audiovisual works in question." Pl. Reply Br. at 8. Plaintiff thoroughly misreads *James* and misstates the applicable law. As is alleged to be the case with the Iron Man Recording, the audio portions of the audiovisual work in *James* were songs that were recorded separately on "phonographic records or prerecorded vocal tracks" and then were synced to video of singers performing those songs. *James*, 544 N.Y.S.2d at 449. As with the songs at issue in *James*, the allegedly separate creation of the Iron Man Recording does not make that part of the audiovisual work's soundtrack a "sound recording" protected from preemption under 17 U.S.C. § 301(c). *See* H.R. Rep. No. 92-487, at 1571 (noting that the sound portion of a television program would not qualify as a "sound recording" "even if the television producer had licensed the release of a commercial phonograph record incorporating the same sounds").

### III. THE UNDISPUTED EVIDENCE DEMONSTRATES THAT THE IRON MAN WORKS WERE WORKS MADE FOR HIRE UNDER THE 1909 ACT

Plaintiff does not dispute any of the facts that Sony has relied upon to demonstrate that the Iron Man Works were made for hire, nor can he because those facts largely came from his

6

own testimony and undisputed evidence offered by Sony.  Instead, Plaintiff challenges the conclusion that the Iron Man Works were made for hire on three grounds.  First, Plaintiff claims that a third-party to the work-for-hire relationship has no standing to dispute the hired party's ownership of the asserted copyright rights.  See Pl. Reply Br. at 9-10.  Second, Plaintiff claims that Marvel did not have the right to "direct and supervise" Plaintiff even though he was creating derivative works based on their copyrighted property.  Id. at 10.  Finally, Plaintiff cites to his deposition testimony asserting, without any corroborating evidence, that there was a contemporaneous understanding with Marvel that Plaintiff would own the Iron Man Works.  Id. at 8, 11.  As discussed below, these arguments are baseless and do not allow Plaintiff to avoid the unmistakable conclusion that the Iron Man Works were made for hire under the 1909 Act.

> **A.    Sony Has Standing To Challenge Plaintiff's Ownership Based On The Iron Man Works' Creation As Works-For-Hire**

Without citation to any legal support for the proposition, Plaintiff claims that a third-party to the work-for-hire relationship is not permitted to challenge ownership on that basis in the absence of a dispute between the hiring party and the creator of the work.  Id. at 9-10.  Contrary to Plaintiff's unsupported assertion, it is well-established that third parties to the purported employer-employee relationship can and do raise the work-for-hire relationship as a defense to a claim of ownership, irrespective of whether there is a dispute between the purported hiring party and the creator of the work.  See, e.g., Psihoyos v. Pearson Educ. Inc., 855 F. Supp. 2d 103, 117 n.7 (S.D.N.Y. 2012); accord M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1490 (11th Cir. 1990); Easter Seal Soc. For Crippled Children and Adults of Louisiana, Inc. v. Playboy Enters., 815 F.2d 323, 333 (5th Cir. 1987); Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 548 (2d Cir. 1984); In re Napster, Inc. Copyright Litig., 191 F. Supp. 2d 1087, 1097 (N.D. Cal. 2002).

### B. Under Established Law, Marvel Had The Right To "Direct And Supervise" The Creation Of The Iron Man Works

Plaintiff claims that the Iron Man Works were not done at Marvel's instance because Marvel allegedly did not have the right to "direct and supervise" the creation of those works. Pl. Reply Br. at 10. Even if Marvel did not have that right, a work can be made for hire even if the hiring party did not have the power to supervise the creation of the work. *See, e.g.*, *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 139 (2d Cir. 2013) ("'Instance' refers to the extent to which the hiring party provided the impetus for, participated in, *or* had the power to supervise the creation of the work.") (emphasis added). Furthermore, the right to direct and supervise need not actually be exercised for it to be evidence that the work is created at the hiring party's instance. *See, e.g.*, *id.* ("The 'right to direct and supervise the manner in which the work is carried out,' moreover, even if not exercised, is in some circumstances enough to satisfy the 'instance' requirement.") (citation omitted).

Nonetheless, Marvel plainly *did* have the right to direct and supervise the creation of the Iron Man Works. As the creator and owner of the *Marvel Super-Heroes* program and the copyrighted works depicted in that program, there can be no dispute that Marvel provided the impetus for, and participated in, the creation of the Iron Man Works that were created specifically for use in that program. As Sony pointed out in its opening papers, when works are created that are derivative of the hiring party's original copyrighted works, the original copyright owner "has the right to 'direct and supervise' the work of the commissioned party, sufficient to render it a work for hire." See Def. Br. at 14-15 (quoting *Estate of Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 163 (2d Cir. 2003) (quoting *Picture Music, Inc. v. Bourne, Inc.*, 457 F.2d 1213, 1216 (2d Cir. 1972))). Marvel, as the owner of the original works on which the Iron Man Works were based, therefore at all times had the right to direct and supervise the

8

creation of the Iron Man Works.  Instead of trying to distinguish this on-point case law, Plaintiff chose to ignore it.

### C. Plaintiff Cannot Present Uncontroverted Evidence Of A Contemporaneous Agreement That He Would Own The Iron Man Works

Faced with the logical conclusion from this undisputed evidence that the Iron Man Works were made for hire, Plaintiff makes the claim that there was a "contemporaneous understanding" with the hiring party that Plaintiff would own the Iron Man Works.  Pl. Reply Br. at 8, 11.  The *sole evidence* for this alleged understanding is the testimony of Plaintiff, *i.e.*, the party who seeks ownership of the works at issue.  *Id.*  It is undisputed that there was no contemporaneous written agreement concerning that alleged understanding.  *See* Pl. Response to Def. Rule 56.1 Statement, ¶ 28.  Nor can Plaintiff point to any evidence of any statements or actions by Marvel demonstrating that it shared this alleged contemporaneous understanding.[5]

To the contrary, the undisputed evidence demonstrates that Marvel did *not* share Plaintiff's alleged understanding.  Sony demonstrated in its opening papers that Marvel made a clear statement of ownership of the Marvel Songs, including the Iron Man Works, that Plaintiff now claims were "understood" to be owned by him.[6]  Marvel's first such statement was in 1967

---

[5] When asked whether he could point to any statements or actions by Marvel as evidence of this "understanding," Plaintiff did not offer any.  Urbont Dep. 46:9-48:17.  Instead, Plaintiff testified that the commissioning party *must* have shared his "understanding" that Plaintiff owned the Iron Man Works because Plaintiff "set up the publishing deal" for the songs.  *Id.* 45:24-46:6.  Plaintiff does not claim that Marvel was aware of this "publishing deal," nor is there any evidence to support such a claim.  To the contrary, Marvel's own assertion of ownership to those songs, as discussed in this section, demonstrates that it was not aware of Plaintiff's arrangement because it made not one statement crediting Plaintiff as the owner of the Iron Man Works or any of the other Marvel Songs.

[6] The term "Marvel Songs" is used herein, as it was used in Sony's opening brief, to refer collectively to the theme songs used for all of the characters that were part of the *Marvel Super-Heroes* program – Iron Man, Captain America, Hulk, Thor, and Sub-Mariner – and the opening theme song for the show entitled *The Marvel Super-Heroes Have Arrived* and a song that was occasionally used as the closing song for the program entitled *The Merry Marvel Marching Society*.  *See* Def. Br. at 4.  As previously stated, and not disputed by Plaintiff, all seven of the Marvel Songs were part of the same project and were treated the same for ownership purposes.  *Id.*

when it released a record that included two of the Marvel Songs that were part of the same arrangement as the Iron Man Works. *See* Pl. Response to Def. Rule 56.1 Statement, ¶ 16. Marvel placed the copyright notice "COPYRIGHT © 1967 MARVEL COMICS GROUP" on both the sleeve of the record and the record itself, thereby making an unmistakable claim that it believed it owned these works. *Id.,* ¶¶ 49-53.[7] Another statement of ownership by Marvel was in 1995 when it sought copyright registrations for the audiovisual works comprising the Iron Man segments of the *Marvel Super-Hero* program. In the applications for those copyright registrations, Marvel did not make any disclosure of any preexisting copyrighted work that was incorporated in those programs as it would be required to do if it believed another's copyrighted work was contained therein. *Id.*, ¶ 31.

Marvel's clear repeated statements of ownership of the Marvel Songs undermines any notion of the existence of a *contemporaneous* "understanding" that Plaintiff owned any of the Marvel Songs, including the Iron Man Works. Once again, when faced with these crucial facts that drastically undercut his assertions, Plaintiff simply ignores them. Plaintiff's reply brief contains *no reference whatsoever* to this undisputed evidence. As a result, Plaintiff cannot present *uncontroverted evidence of a contemporaneous agreement* that Plaintiff was the owner of the Iron Man Works and, in the absence of such uncontroverted evidence, the Iron Man Works are deemed to be works-for-hire and therefore not owned by Plaintiff. *See, e.g., Playboy Enters.,*

---

[7] Although Plaintiff fails to address this evidence in his brief, he claims, in response to Sony's Statement of Undisputed Facts, that the copyright notice only served to protect the artwork on the Marvel record, rather than the musical compositions embodied on that record, because, according to Plaintiff, copyright notice was not required to protect a composition on a phonorecord. *See* Pl. Response to Def. Rule 56.1 Statement, ¶ 53 (citing *Jones v. Virgin Records, Ltd.*, 643 F. Supp. 1153 (S.D.N.Y. 1986)). To the contrary, the state of the law in 1967 when the Marvel record was distributed fully justified any concern by Marvel that the distribution of that record without copyright notice would abandon Marvel's rights to the musical compositions contained on that record. *See, e.g., McIntyre v. Double A-Music Corp.*, 166 F. Supp. 681, 682 (S.D. Cal. 1958); *Mills Music v. Cromwell Music*, 126 F. Supp. 54, 69-70 (S.D.N.Y. 1954); *Shapiro, Bernstein & Co. v. Miracle Record Co.*, 91 F. Supp. 473, 475 (N.D. Ill. 1950); *see also Rosette v. Rainbo Record Mfg. Corp.*, 354 F. Supp. 1183, 1193 (S.D.N.Y. 1973), *aff'd*, 546 F.2d 461 (1976). The copyright notice on the Marvel record therefore was clearly intended to protect the musical works on that record rather than simply the drawings on the label.

*Inc. v. Dumas*, 53 F.3d 549, 557 (2d Cir. 1995); *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d 315, 332 (S.D.N.Y. 2003), *aff'd*, 88 Fed. App'x 468 (2d Cir. 2004).

## IV. MARVEL HAS NOT ADMITTED OR AGREED THAT PLAINTIFF IS THE OWNER OF THE IRON MAN WORKS

Plaintiff repeatedly claims that, by entering into the Settlement with Marvel, Marvel agreed or admitted that Plaintiff owns the Iron Man Works. *See* Pl. Reply Br. at 4, 6, 9. This assertion is flatly untrue.[8] As shown in Sony's moving papers, Marvel makes no statement of *agreement* or *admission* as to Plaintiff's ownership in the Settlement. *See* Def. Br. at 20 n.5. Rather than attempt to contradict Sony's proof, Plaintiff simply ignores it once again.

Instead, Plaintiff suggests that Marvel agreed that Plaintiff is the owner of the Iron Man Works because the terms of the Settlement included a purported "license" of those works. *See* Pl. Reply Br. at 6, 7, 9. Based on the structure of the Settlement – including that there was no provision for ongoing royalties and Marvel did not agree not to challenge Plaintiff's copyrights – it is clear that the purported "license" was nothing more than a *post hoc* resolution of a dispute regarding actions that Marvel had already taken, rather than an admission of liability.

It is well established, moreover, that a purported copyright license is not an admission of either ownership or validity that would estop the licensee, or anyone else, from asserting that the copyright is invalid or not owned by the licensor. *See, e.g.*, *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 515 n.5 (S.D.N.Y. 2011); *Melchizedek v. Holt*, 792 F. Supp. 2d 1042, 1056-57 (D. Ariz. 2011); *FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, No. 07 C 1794, 2008 WL 162756, at *3 (N.D. Ill. Jan. 14, 2008); *Twin Books Corp. v. Walt Disney Co.*, 877 F. Supp. 496, 500 (N.D. Cal. 1995), *rev'd on other grounds*, 83 F.3d 1162 (9th

---

[8] Furthermore, this Settlement was entered into nearly 30 years after the creation of the Iron Man Works, and the fact that it reflects an ownership dispute between the parties shows that they most certainly did not have a contemporaneous understanding that Plaintiff owned the Iron Man Works when those works were created.

11

Cir. 1996); Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.15.  A license only acts as an admission of valid copyright ownership when the licensee expressly agrees, as part of the license, not to contest the validity or ownership of the copyright.  *See FM Indus., Inc.*, 2008 WL 162756, at *3; *Twin Books Corp.*, 877 F. Supp. at 500.  There was no such agreement in the Settlement.  The Settlement's use of the term "license" therefore does not represent an admission or agreement of Plaintiff's ownership by Marvel or any other party.

## V.  AS A MATTER OF LAW, SONY HAS NOT ENGAGED IN WILLFUL INFRINGEMENT

In its opening papers, Sony demonstrated as a matter of law that it did not act willfully because (i) Sony relied on representations of the party that created *Supreme Clientele* that the album was not infringing; and (ii) any continued sale of the album after receiving Plaintiff's objection is not evidence of willfulness because, among other reasons, Plaintiff refused to provide the proof of ownership Sony requested, which stymied Sony's investigation into the matter.  *See* Def. Br. at 23-25.

In response, Plaintiff does not challenge Sony's assertion that the original release of *Supreme Clientele* was not willful, but instead states that Plaintiff "does not need to claim that Sony was a willful infringer when it released the album."  Pl. Reply Br. at 11.  Plaintiff then claims that Sony acts willfully when "it continues to distribute *Supreme Clientele* even after it learned with certainty that it does not have the right to distribute" that album.  *Id.* at 12.  Once again, Plaintiff simply ignores the facts and law previously cited by Sony.  As discussed, Sony at no time learned "with certainty" that there was any infringement of the Iron Man Works.  As previously stated, as part of its investigation upon learning of Plaintiff's claim, Sony asked Plaintiff's attorney for proof that Plaintiff owned the Iron Man Recording.  *See* Pl. Response to Def. Rule 56.1 Statement, ¶ 47.  Plaintiff's counsel refused to provide any such proof, which is

not surprising because that proof is lacking. *Id.*, ¶ 48. As Sony has demonstrated, and Plaintiff has not even attempted to challenge, there is no willfulness when the allegedly infringing party tries to investigate a claim and is stymied by the alleged copyright holder's failure to provide substantiating information. *See* Def. Br. at 25 (citing *Caffey v. Cook*, 409 F. Supp. 2d 484, 504-05 (S.D.N.Y. 2006); *New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293, 301-02 (S.D.N.Y. 2001)). Furthermore, the arguments set forth on this motion demonstrate why Sony had, and continues to have, a more than reasonable basis for why there is no liability and is justified in continuing to distribute *Supreme Clientele*. Sony therefore respectfully submits that as a matter of law it cannot be found to have acted willfully.

## CONCLUSION

Sony respectfully requests that Plaintiff's motion for summary judgment be denied and that summary judgment be entered in favor of Sony on all causes of action in the Complaint.

Dated: March 30, 2015                    **HAND BALDACHIN & AMBURGEY LLP**

By: _____
Marc S. Reiner (MR-6669)
8 West 40th Street, 12th Floor
New York, New York 10018

*Attorneys for Defendants
Sony Music Entertainment and
Razor Sharp Records, LLC*